**Case Numbers: 24-2030, 24-2031, 24-2032, 24-2033, 24-2035, 24-2036, 24-2037, 24-2038**

# United States Court of Appeals for the Federal Circuit

RECEIVED
NOV 21 2024
United States Court of Appeals
For the Federal Circuit

**FRANZ A. WAKEFIELD, D|B|A COOLTVNETWORK.COM, INC.**
*Plaintiff-Appellant*

**v.**

**BLACKBOARD, INC., META PLATFORMS, INC., F|K|A FACEBOOK, INC., INTERNATIONAL BUSINESS MACHINES CORPORATION, KALTURA, INC., MICROSOFT CORPORATION, OOYALA, INC., SNAP, INC., TRAPELO CORP.,**
*Defendants-Appellees*

**Appeals from the United States District Court for the District of Delaware in the following Case Numbers: 1:19-CV-00291-JLH, 1:19-CV-00292-JLH, 1:19-CV-00293-JLH, 1:19-CV-00294-JLH, 1:19-CV-00296-JLH, 1:19-CV-00297-JLH, 1:19-CV-00534-JLH, 1:19-CV-00535-JLH, PRESIDING, THE HONORABLE JENNIFER L. HALL.**

## APPELLANT "WAKEFIELD'S" CORRECTED REPLY BRIEF WITH SUPPLEMENTAL APPENDIX

**Date:** **November 19, 2024**

/s/ Franz A. Wakefield

**Franz A. Wakefield,** ***Pro Se***
**D|B|A COOLTVNETWORK.COM, INC.**
4 WEST LAS OLAS BOULEVARD; SUITE 1206
FORT LAUDERDALE, FLORIDA 33301
TELE: 305-206-4832
EMAIL: FRANZWAKEFIELD@COOLTVNETWORK.COM

# TABLE OF CONTENTS

**PAGE NUMBERS**

**I. PREMISE........................................................................1 – 4**

**II. ARGUMENT....................................................................5 – 30**

**1. Ensuring Due Process: The Imperative of a Competent Three-Judge Panel from the Start..................5 – 9**

**2. Claim Construction: The Cornerstone of Patent Rights Protection ..............................................9 - 17**

**a. Error in the Means-Plus-Function Determination..............9 – 10**

**b. Algorithm for "Performing a Plurality of Predetermined Functions".........................................................10 - 17**

**c. Algorithm for "Selecting and Activating" Functions by Clicking on Hot Spots.............................................11 – 12**

**d. Algorithm for Database – Driven Adaptive Functionality.........12**

**e. Misconstruction of Key Terms..................................13 – 14**

**f. Error in Mode Control Interpretation...............................14**

**g. Misapplication of *Stare Decisis* and Inconsistent Claim Construction.....................................................15 – 18**

**3. The District Court's Use of Vague and Fanciful Language Cannot Excuse Its Duty to Address Appellant's Substantive Argument and Clear Objections as it Pertains to the Independent Claims of the '696 Patent..........................18 – 23**

**4. Judge Pauline Newman's Panel in the Prior Appeal Was Thoroughly Briefed with Timely Arguments on Independent Claims 15, 17, and 18 and the District Court's Dereliction of Duty...........................................................23 – 26**

5. **"The litigants whose rights are at stake in the cases before this Court deserve to have confidence that none of the judges ruling on their cases suffers from a cognitive impairment that may affect the resolution of their cases" ......................27 – 30**

**III. CONCLUSION..............................................................30**

**IV. ADDENDUM...............................................................33**

# TABLE OF CITATIONS OF CASES

**CASES** **PAGE NUMBERS**

*Alcon Research Ltd. v. Barr Labs, Inc.,* 745 F. 3d 1180, 1191 (Fed. Cir. 2014)....18

*Apple Inc. v. Motorola, Inc.* 757 F. 3d 1286 (Fed. Cir. 2014)....3, 19, 22

*BASF Corp., v. Johnson Matthey, Inc.* 875 F. 3d 1360....15

*CenTrak, Inc. v. Sonitor Tech, Inc.,* 915 F. 3d 1360 (Fed. Cir. 2019)....17

*Dyfan LLC v. Target, Corp.,* 28 F. 4th 1360 (Fed. Cir. 2022)....2, 5-6, 15-16, 20-21, 28

*Greenberg v. Ethicon-Surgery, Inc.* 91 F. 3d 1580, 1583 (Fed. Cir. 1996)....17, 20, 22

*Indacon, Inc. v. Facebook, Inc.,* 824 F. 3d 1352 (Fed. Cir. 2016)....13

*John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.,* 119 F. 3d 1070, 1076 n.6 (3d Cir. 1997)....22

*McBryde v. Committee to Rev, Cir. Council Conduct,* 83 F. Supp. 2d 135 (D.D.C. 1999)....30

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC,* 403 F. 3d 1364, 1371 (Fed. Cir. 2005)....25

*New Process Steel, L.P. v. NLRB,* 560 U.S. 674 (2010)....7

*Nguyen v. United States,* 539 U.S. 69, 82 (2003)....7

*Simon v. Cebrick,* 53 F. 3d 17 (3d. Cir 1995)....26

*Thomasen v. Kijakazi,* 2:20-cv-20549 (D.N.J. Apr. 11, 2022)....8

*Triton Tech. of Tex., v. Nintendo of America, Inc.,* 753 F. 3d 1375 (Fed. Cir. 2014)....9

*Turner v. Rogers, et. al.*, 564 U.S. 431 (2011)..................................1, 2, 7

*United States v. Angel-Huerta*, No. 16-4117 (3d. Cir. Dec. 1, 2017)...............21

*United States v. James*, 955 F. 3d 336 (3d. Cir. 2020)...............................22

*United States v. Joseph*, 730 F. 3d 336, 337 (3d Cir. 2013)........................21

*Vente v. Gonzales*, 415 F. 3d 296, 299 N.3 (3d Cir. 2005)..........................22

*WC TopCo LLC., v. WorkCentric 1, LLC.*, 24-10040 (MFW)
(D. Del July 16, 2024).......................................................................22

*Williamson v. Citrix Online, LLC* 792 F. 3d 1339, 1348
(Fed. Cir. 2015)......................................................3, 6, 20, 28

*Yovino v. Rizo*, 139 S. Ct. 706 (2019).................................................6

*Zeroclick, LLC., v. Apple, Inc.*, 891 F. 3d 1003
(Fed Cir. 2018)................................................2, 4, 6, 15, 20, 28

**STATUTES**

§ 112 (f)..........................................................................19, 20

28 U.S.C. § 46(b)..............................................................2, 27

35 U.S.C. § 112, ⁋ 6....................................2-4, 16-18, 20-22, 24, 26

35 U.S.C. § 282.....................................................................4

U.S.C. § 112, ⁋ 2..................................................................10

**JUDICIAL RULES**

**Rule 60..............................................................................1, 5, 7-8, 30**

**Rule 60(b).........................................................................2, 8, 29**

**Rule 5 of the Rules for Judicial-Conduct and Judicial Disability...............27**

**CONSTITUTIONAL PROVISIONS**

**14th Amendment.................................................................28**

**OTHER AUTHORITIES**

**S. Rep. No. 96-362.............................................................30**

# I. PREMISE

A vital component of APPELLANT ("WAKEFIELD'S") Rule 60 Motion and case, involves the impact of judicial impairment on due process coupled with the importance of claim construction in protecting patent rights.

APPELLANT ("WAKEFIELD") believes that the record is clear and well developed in showing that the district court failed its duty to follow the doctrine of ***stare decisis*** which requires the Court to apply the same legal principles and reach a similar outcome, by following earlier judicial decisions, when the same points arise again in litigation.

The APPELLEES state at page one of their response that the "[Rule 60] [M]otion sought to undo the indefiniteness ruling affirmed by this Court <u>by raising a legal argument that was known and that could have been raised</u> years earlier in the district court, or argued during the subsequent appeal." *Emphasis Added.*

To the contrary, APPELLANT ("WAKEFIELD'S") Rule 60 Motion highlighted the error of the district court which narrowed the scope of the disputed '696 Patent and incorrectly ruled that the independent claims of the patent were indefinite, all of which was fully briefed and argued in both forums. **See. Appx00432 –Appx00528 and See. Appx00659–Appx00858.** In addition, the motion argued that Judge Newman's cognitive issues compromised the fairness of the appellate review in the prior appeal, impacting procedural integrity as outlined in *Turner v. Rogers,*

et. al., 564 U.S. 431 (2011), which emphasizes the necessity of judicial competence in ensuring due process. According to 28 U.S.C. § 46(b), a panel must consist of three capable judges from its inception to guarantee an impartial hearing. Given the findings and observations regarding Judge Newman's impairment it's reasonable to argue that her inclusion on the panel invalidates procedural fairness, warranting a Rule 60(b) Motion as timely and necessary to secure due process. Although APPELLANT ("WAKEFIELD") believes and the record shows that the district court unjustly narrowed the scope of the '696 Patent committing reversible error, the prior appellate panel was created with a judge with observed chronic and a deteriorating mental capacity, which displaced the equilibrium and dynamics of the panel causing the panel to fail in its supervisory function and thus it affirmed a ruling from the district court that conflicts with and tacitly overrules the Federal Circuit's own precedents in *Zeroclick,* and in *Dyfan* the most recent intervening clarification of the law as it pertains to the ***2 Step Process*** for independent claims in determining the application of § 112, ⁋ 6 in a means-plus-function analysis.

The district court erred by discounting clear disclosure in the specification, and in some cases the claim language itself, of the algorithmic steps for performing the respective functions of the two means-plus-functions limitations of Claim 1, which satisfy the disclosure requirements for such means-plus-function claims. **See. Appx00529–Appx00544.** In addition, claims 15, 17, and 18, are sufficiently specific in structure to preclude the need for "means-plus-function" interpretation under 35

U.S.C. § 112, ⁋ 6. This interpretation aligns with recent Federal Circuit precedents that establish clear guidelines for when a claim should be presumed to invoke § 112, ⁋ 6. Cases such as *Williamson v. Citrix Online, LLC* 792 F.3d 1339, 1348 (Fed. Cir. 2015) have clarified that explicit "means" language triggers § 112, ⁋ 6 but when a claim includes clear structural language, the means-plus-function presumption does not apply. Here, claims 15, 17, and 18 ***do not*** use "means" language and the claims specify how functionalities like "multifunctional hot spots" operate within distinct user-interactive modes, indicating a level of detail adequate for structural understanding by a skilled artisan. **See. Appx00069–Appx00142.**

Several Federal Circuit cases reinforce structural specificity and bolster this approach by outlining when a claim is sufficiently detailed to avoid the means-plus-function label. For example, in *Apple Inc. v. Motorola, Inc.* 757 F.3d 1286 (Fed. Cir. 2014), the court noted that "processor" and "controller" terms could be understood as structural when they convey specific operations or objectives. This decision reflects a broader recognition that terms in a claim are not automatically functional if they provide explicit operational guidance to a person of ordinary skill in the art. This case supports APPELLANT ("WAKEFIELD'S") argument that the terminology in claims 15, 17, and 18 does not invoke § 112, ⁋ 6 because the patent includes substantial information on how structural terms like "mode control," "hot spots," and "multifunctional hot spots" should operate within the method sequence.

Moreover, *Zeroclick, LLC v. Apple Inc.* 891 F. 3d 1003 (Fed. Cir. 2018) reaffirms this view by highlighting that terms without "means" language are not subject to § 112, ¶ 6 unless explicitly necessary due to vagueness. In *Zeroclick*, the court held that the absence of "means" terminology allowed the claim terms to stand on their operational clarity, analogous to the language used in APPELLANT ("WAKEFIELD'S") patent.

APPELLANT ("WAKEFIELD'S") claim language, grounded in recent precedents and supported by statutory safeguards, such as 35 U.S.C. § 282 which upholds the presumption of validity, clearly avoids the need for means-plus-function interpretation, directly countering the APPELLEES' assertions. Furthermore, the due process concerns stemming from judicial impairment substantiate APPELLANT ("WAKEFIELD'S") demand for reevaluation under a fair procedural framework. By affirming claim validity and reinforcing judicial integrity, APPELLANT ("WAKEFIELD'S") case maintains alignment with both structural clarity requirements and constitutional standards, meriting a favorable outcome.

# ARGUMENT

## II. Ensuring Due Process: The Imperative of a Competent Three-Judge Panel from the Start.

The district court gravely abused its discretion by denying APPELLANT ("WAKEFIELD'S") Rule 60 Motion. Upon reviewing the motion, the court could have reasonably assessed that the intervening legal clarification in the precedential case *Dyfan* underscored a critical error in its judgment, leading to the invalidation of APPELLANT ("WAKEFIELD'S") patent. This error was compounded by the Judicial Council's order suspending Judge Pauline Newman due to "reasonable concerns that Judge Newman suffers from a disability preventing her from effectively discharging the duties of her office" **See. Appx00113, *Also* See. Appx00469, *Id.* at ⁋ 1-3**. Accordingly, the district court should have recognized that the panel's affirmation of its flawed ruling is void, as it included a judge officially deemed unable to discharge judicial duties due to mental disability issues.

APPELLANT ("WAKEFIELD") contends that it is illegal to allow a judge with a witnessed and documented state of deteriorating mental capacity to be elected to sit on an appellate panel and cast a vote when that judge has a lack of comprehension of the issues of a particular case or has exhibited "conduct prejudicial to the effective and expeditious administration of the business of the courts." **See. Appx00040–Appx00041.** The quintessential purpose of appointing a judge to a panel is to be able to provide to the panel an unbiased review and comprehension of

the issues of a particular case, to deliberate, and to cast a vote based on a comprehension of the law, including a knowledge of precedential cases that are binding on existing and future panels.

The appointment and inclusion of Judge Newman on APPELLANT ("WAKEFIELD'S") appellate panel, who had a witnessed (20 court staff) and documented state of deteriorating mental capacity, over a 2-year period and during APPELLANT ("WAKEFIELD'S") prior appeal, displaced the equilibrium and dynamics of the appellate panel, causing a defect in the integrity of the proceeding which caused the Federal Circuit to affirm the district court's ruling which is in direct conflict with its own precedents in *Williamson II*, *Zeroclick*, and *Dyfan*; ultimately violating APPELLANT ("WAKEFIELD'S") due process and constitutional rights. **See. Appx00639; *Also* See. Appx00629–Appx00639.**

In *Yovino v. Rizo*, 139 S. Ct. 706 (2019), the Supreme Court held that "[b]ecause Judge Reinhardt was no longer a judge at the time when the en banc decision in [the] case was filed, the Ninth Circuit ***erred in counting him as a member of the majority***. That practice effectively allowed a deceased judge to exercise the judicial power of the United States after his death. But federal judges are appointed for life, not for eternity." *Emphasis Added.* This logic holds true in APPELLANT ("WAKEFIELD'S") case, federal judges are appointed for their comprehension and understanding of the law, if a judge's comprehension of the law ends because of witnessed and documented physical and/or mental disability issues,

then their term as an "active" judge able to sit on panels, hear cases, and wield the judicial power of the United States should end as well.

APPELLANT ("WAKEFIELD") firmly asserts that it is impermissible for a judge with an observed and documented decline in cognitive capacity to participate in appellate decisions. Established case law supports this position, as the Supreme Court has long emphasized the necessity of judicial capability, both physical and mental, to uphold due process. In *Turner v. Rogers*, 564 U.S. 431 (2011), the Supreme Court ruled that a judge presiding over any proceeding must possess the "requisite procedural and substantive knowledge" to ensure fairness. Similarly, in *New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010), the Supreme Court underscored that for due process to be maintained, a competent three-judge panel must initially review cases:

> "We have interpreted that statute to '**requir[e] the inclusion of at least three [capable] judges in the first instance**,' but to allow a two-judge 'quorum to proceed to judgment when one member of the panel dies or is disqualified.' Nguyen v. United States, 539 U.S. 69, 82 (2003)." (*Emphasis Added*)

Contrary to the APPELLEES' assertion that APPELLANT ("WAKEFIELD'S") Rule 60 Motion merely "raises a legal argument that was known and could have been raised earlier" (*Emphasis Added*), APPELLANT ("WAKEFIELD") maintains that the record is robustly developed with legal argumentation substantiating that Independent Claims 1, 15, 17, and 18 are valid. These claims are comprehensively supported by the claim language itself, the

patent's specification, the patent's prosecution history, and extrinsic evidence. **See. Appx00529–Appx00544, and Appx00450–Appx00527.** Notably, the APPELLEES' claim of insufficient legal argumentation by prior counsel only serves to underscore the district court's egregious abuse of discretion in denying the Rule 60 Motion.

Because APPELLANT ("WAKEFIELD'S") patent stands at risk of invalidation, with potential damages in the hundreds of millions of dollars rendered irrecoverable due to his counsel's alleged inadequacies, the Rule 60 Motion was essential to prevent ***a profound miscarriage of justice***. **See. Appx00131–Appx00141.** No evidence suggests that APPELLANT ("WAKEFIELD") or his counsel acted in bad faith. In *Thomasen v. Kijakazi*, 2:20-cv-20549 (D.N.J. Apr. 11, 2022), the District Court of Delaware held that Rule 60(b) relief was warranted, citing that "the denial of the Motion would work to the ***great prejudice of Plaintiff***, whose claim would be lost through the actions (or, more precisely, the inactions) of his counsel" (*Emphasis Added*).

Thus, considering the intervening legal precedents, APPELLANT ("WAKEFIELD'S") reasonable reliance on judicial competence, the severe consequences of his counsel's alleged omissions, and the court's refusal to grant Rule 60 relief when the motion was filed approximately two months after the Judicial Council ordered the suspension of Judge Newman, stating in said order that "evidence establishes reasonable concerns that Judge Newman suffers from a

disability preventing her from effectively discharging the duties of her office" (*Emphasis Added*), when taken together constitutes a substantial abuse of discretion which warrants remand. **See. Appx00083–Appx0084, Appx0094–Appx0095, and Appx00033–Appx00041.**

## III. Claim Construction: The Cornerstone of Patent Rights Protection.

### i. Error in the Means-Plus-Function Determination

The district court's ruling that certain means-plus-function claims were indefinite is one of the core issues contested. According to APPELLANT ("WAKEFIELD"), the district court overlooked clear disclosures in the specification of the '696 Patent, which detail algorithmic steps necessary for each predetermined function. For instance, APPELLANT ("WAKEFIELD") describes the precise steps involved for each mode, such as "shop mode" and "bid mode," and points to specific sections in the patent that identify the algorithms involved. **See. Appx00531–Appx00535, SAppx1256, and SAppx1268.** APPELLANT ("WAKEFIELD") argues that these disclosures are sufficient for a person of ordinary skill in the art to understand the structure needed to perform these functions, and that the district court's ruling on indefiniteness is thus an error. Notably, established Federal Circuit precedent states that computer-implemented means-plus-function claims should be considered indefinite only if no algorithm is disclosed (See. *Triton Tech. of Tex., v. Nintendo of America., Inc.*, 753 F. 3d 1375 (Fed. Cir. 2014)).

The APPELLEES state in their response at page three that "Judge Hall recommended that claim 1 of the '696 patent be found invalid as indefinite under 35 U.S.C. § 112 ⁋ 2 (pre-AIA), because it recited two means-plus-function limitations for which ***the specification failed to recite a corresponding structure and algorithm***, i.e., 'means for performing' and 'means for selecting and activating.' " (*Emphasis Added*). Again, the assertions of the APPELLEES underscore the district court's egregious error. If a meaningful construction analysis was completed the district court would have found the following corresponding structure and algorithms, which is also documented by APPELLANT ("WAKEFIELD'S") expert and legal argument: **See. Appx00421–Appx00431, Appx00441–Appx00442, Appx00536–Appx00539, APPELLANT ("WAKEFIELD'S") Initial Brief at pages 19–39, and SAppx1240–SAppx1268.**

1. **Algorithm for "Performing a Plurality of Predetermined Functions"**

- **Algorithm**: The patent discloses software utilizing "hot spots" in digital media (e.g., video and audio files) that execute multiple functions based on user interaction. These functions include shopping, bidding, linking, entertainment, and interaction with streamed content. Each functional mode is governed by an expandable control bar, enabling the user to select and toggle functions depending on timestamps or direct user input.

- **Supporting Excerpts**:
  - "The multifunctional hot spots may access information within the user's system, or a globally accessible network or over any local area network. Prerecorded and/or live-streamed video is preferred as it provides a unique foundation for affording the user the opportunity to interact with video and other content in the website through activating multifunctional hotspots having a plurality of different modes or functions" **See. Appx00062, *Id.* at 2:48-55 and SAppx1256.**
  - "The function expandable menu bar comprises a plurality of different functions or modes. The clickvideoshop™ mode is configured to perform various actions when activated…" **See. Appx00064, *Id.* at 5:9-50, and See. Appx00421-Appx00431, Appx00441–Appx00442, APPELLANT ("WAKEFIELD'S") Expert testimony pinpointing *algorithm*, and *algorithm* documentation in the Joint Claim Chart, and Appx00536–Appx00538.**

**2. Algorithm for "Selecting and Activating" Functions by Clicking on Hot Spots**

- **Algorithm**: The patent specifies that users can activate specific hot spots by moving their cursor over designated areas on the screen. If the cursor is within a hot spot, the software system highlights the area, and a click activates the hot spot's function based on the selected mode. The control bar provides modes such as shop, bid, or link, which adjust the hot spot functionality.

- **Supporting Excerpts**:
  - "The software further comprises a function expandable menu bar for identifying, offering and delivering the plurality of activity modes... A multifunctional hot spot can support one or more modes at any time" **See. Appx00062-Appx00063, *Id.* at 2:64-3:3 and 3:11-12, and SAppx1268.**
  - "If the cursor is detected as being over a hot spot, then it checks whether the current time position of the movie playback is within the range

specified by the custom-defined object…the program 10 determines whether a control bar action has been activated" **See. Appx00065, *Id.* at 8:33-38, See. Appx00421-Appx00431, Appx00441–Appx00442, APPELLANT ("WAKEFIELD'S") Expert testimony pinpointing *algorithm*, and *algorithm* documentation in the Joint Claim Chart, and Appx00538–Appx00539.**

**3. Algorithm for Database-Driven Adaptive Functionality**

- **Algorithm**: The system's adaptable functions are supported by a data file that tracks user interaction history and associated timestamps, adjusting hot spot modes dynamically. This allows the software to provide different actions at specific times or under specific conditions.
- **Supporting Excerpts**:
  - "A data file contains tags that can specify various functions when a hot spot is activated. Such as, whether the video file should only play once or play in a continuous loop; the URL of the web page or website to open when a hot spot is activated…" **See. Appx00064, *Id.* at 6:4-25, SAppx1243, SAppx1248, SAppx1250, and SAppx1253.**
  - "The invention 10 requires, but is not limited to, at least one tag in the data file, and at least one of the above-noted steps should be specified for defining the 'hot spots' functionality, as defined through the mode control bar" **See. Appx00064, *Id.* at 6:18-21, and See. APPELLANT ("WAKEFIELD'S") Initial Brief at pages 13–14.**

These excerpts from the '696 Patent specification confirm the structural and operational framework supporting the "means-plus-function" interpretations and demonstrate how the system's mode control, time-stamped interactivity, and adaptive data configuration fulfill the requirements outlined in Claim 1.

### ii. Misconstruction of Key Terms

APPELLANT ("WAKEFIELD") also argues that the district court misinterpreted critical terms in the patent, specifically "bid mode" and "interact mode." The district court defined "bid mode" narrowly as requiring an auction, relying on references to "bids" and "auctions" in the specification. APPELLANT ("WAKEFIELD") contends that this interpretation ignores the broader description within the patent, which allows bid mode to include a communication interface without necessitating an auction. According to APPELLANT ("WAKEFIELD"), the patent explicitly states that bid mode features can function independently of an auction, and therefore, the district court's interpretation constrains the patent's intended scope without justification. This restrictive view, APPELLANT ("WAKEFIELD") argues, fails to align with Federal Circuit guidance to avoid limiting claim language beyond what is disclosed (See. *Indacon, Inc. v. Facebook, Inc.*, 824 F. 3d 1352 (Fed. Cir. 2016)). **See. Appx00539–Appx00540, SAppx1254, and SAppx1263–SAppx1266.**

Similarly, the court's construction of "interact mode" is disputed as overly narrow. While the district court restricted "interact mode" to interactions with live-streamed programs, APPELLANT ("WAKEFIELD") points to the patent specification, which also allows interaction through teleconferencing features and communication windows, irrespective of live-streamed content. This broader interpretation would provide users with alternative ways to interact beyond live

streaming, a flexibility embedded within the patent. APPELLANT ("WAKEFIELD") argues that restricting the term to live-streaming interactions disregards the patent's full scope and established interpretations that should prevent arbitrary narrowing of patent language. **See. Appx00541.**

### iii. Error in Mode Control Interpretation

The district court's interpretation of the claim phrase "wherein the mode control contains a plurality of modes" is another point of contention. The district court's construction required users to "switch" between modes, which, according to APPELLANT ("WAKEFIELD"), is overly restrictive and incompatible with the patent's disclosure. APPELLANT ("WAKEFIELD") references patent language indicating that multiple modes can be active simultaneously, allowing users to engage in various functions without needing to exit one mode before entering another. This is evident, for example, in descriptions where users can shop while also using the "Digital Locker Mode." Limiting the mode functionality to require switching not only contradicts the patent's intention but also restricts users' interaction with the software, creating an error that deviates from accepted interpretations of multi-mode software interfaces. **See. Appx00541–Appx00543, SAppx1252, and SAppx1259–SAppx1261.**

### iv. Misapplication of Stare Decisis and Inconsistent Claim Construction

Lastly, APPELLANT ("WAKEFIELD") argues that the district court's claim construction and indefiniteness findings contravene the ***doctrine of stare decisis*** by disregarding previous interpretations of similar claims. For example, well-established precedents require that indefiniteness be proven with clear and convincing evidence (See. *BASF Corp. v. Johnson Matthey Inc.*, 875 F. 3d 1360). APPELLANT ("WAKEFIELD") contends that the district court ignored this burden by not adequately considering the disclosed algorithms within the patent, and instead, arrived at a different conclusion without sufficient grounds. This departure from precedent demonstrates a failure to uphold the ***doctrine of stare decisis***, as the district court should have considered Federal Circuit standards mandating a higher threshold for proving indefiniteness, especially given that the patent includes structured algorithms meant to satisfy this requirement.

In addition, the district court abandoned its ***duty*** to perform the ***2 Step Process Analysis*** on Independent Claims 15, 17, and 18, as clarified in the precedential cases *Zeroclick*, and *Dyfan*, relying ***only*** on a short excerpt from APPELLANT ("WAKEFIELD'S") argument regarding enablement in the joint brief which was used to invalidate the claims; this excerpt states: "**[f]or the same reasons set forth with respect to the claim limitations in paragraph 2[A] [referring to APPELLANT ("WAKEFIELD'S") opening position], these elements would be**

**readily understood by a person of ordinary skill in the art.**" (*Emphasis Added*) **See. SAppx1279.**

This text is not a concession by APPELLANT ("WAKEFIELD") that claims 15, 17, and 18 are means-plus-function claims, it should simply be interpreted by the district court that the method and the tangible computer-readable medium claims (i.e. claims 15, 17, and 18) are sufficiently enabled and supported by the same evidence and structure in the '696 Patent Specification, the structural terms within the claims themselves (i.e. "mode control," "hot spot," and "multifunctional hot spot"), the prosecution history, the evidence compiled in the joint claim chart, and similar relevant extrinsic evidence which notably, also proves the validity of the apparatus Claim 1. But even so, the precedential case *Dyfan* held that poor legal drafting of argument or claims ***does not*** allow the courts to bypass their ***duty*** to perform a proper means-plus-function analysis.

> **"[P]oor claim drafting does not allow courts to bypass the presumption that a claim does not invoke § 112, ¶ 6 in the absence of the word 'means.' nor does it relieve courts of their duty to evaluate whether that presumption has been overcome."** (*Emphasis Added*) See. *Dyfan LLC v. Target Corp.*, 28 F. 4th 1360 (Fed. Cir. 2022) at pg. 19.

The district court *also* made another crucial error in its ruling on the '696 Patent's use of the term "Java Applet" and APPELLANT ("WAKEFIELD'S") use of the term as structure supportive of the claims of the patent which refer to the interactive sequence of "selecting," "activating," and "performing" the functions (*which maybe a compounded set of functions—See. APPELLANT*

*("WAKEFIELD'S") Initial Brief at page 35*) associated with the independent claim structural terms "hot spot" and "multifunctional hot spot."

A "hot spot" in ***digital media arts*** is generally known as an area on a video being displayed, "[w]hen a viewer clicks the hotspot, they are taken to either another timestamp within the video or a URL depending on how the video author configures the hotspot."[1] See. *Greenberg v. Ethicon-Surgery, Inc*., 91 F. 3d 1580, 1583 (Fed. Cir. 1996), where the Federal Circuit held that "§ 112, ¶ 6 ***did not apply*** to the term 'detent mechanism,' because 'the noun 'detent' ***denotes <u>a type of device</u> with a <u>generally understood meaning</u> in the mechanical arts***, even though the definitions are expressed in functional terms.'" *Emphasis Added.*

The district court erred by ruling: "***[w]here the patent uses the term applet, it is simply an abstraction that describes the function being performed***." *Emphasis Added*. **See Appx00027, and *also* See. Initial Brief pgs. 26-39**.

In *CenTrak, Inc. v. Sonitor Tech., Inc*., 915 F. 3d 1360 (Fed. Cir. 2019), the appellant, as in this case, argued that "the district court's written description ruling erred by effectively requiring the specification to disclose basic, routine implementation details" but the Federal Circuit explained in *CenTrak* that "'written description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described: it is not about whether

---

[1] See. **Kaltura Support**: https://www.niu.edu/kaltura/editing-and-enhancing/adding-hotspots-for-interactivity.shtml

the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue.' Alcon Research Ltd. V. Barr Labs., Inc., 745 F. 3d 1180, 1191 (Fed. Cir. 2014)." **See. APPELLANT ("WAKEFIELD'S") Initial Brief at pages 37–39.**

## IV. The District Court's Use of Vague and Fanciful Language Cannot Excuse Its *Duty* to Address Appellant's Substantive Argument and Clear Objections as it Pertains to the Independent Claims of the '696 Patent.

Vague and fanciful language used by the district court trivializing Independent Claims 15, 17, and 18, stating that APPELLANT ("WAKEFIELD") conceded that the claims are "***standing or falling***" with claim 1, is abusive discretion and an abandonment of ***a duty*** of the court; especially when APPELLANT ("WAKEFIELD") explicitly made substantive argument in the joint claim construction brief and in the Markman Claim Construction Hearing that § 112, ⁋ 6 ***does not*** automatically apply when "means" ***is not*** used in an independent claim because a ***rebuttable presumption*** exists which must not be overlooked. **See. Appx00031, Appx00437, Appx00439, Appx00457–Appx00458, and SAppx1269 –SAppx1279.**

APPELLEES at pages 5-6 of their response brief, references and focuses on APPELLANT ("WAKEFIELD'S") ***objections*** to the magistrate's report and recommendation stating that APPELLANT ("WAKEFIELD"): "devoted several pages to arguing that claim 1 was not indefinite, <u>but never challenged Judge Hall's</u>

treatment of claims 15, 17, and 18 as standing or falling with claim 1. [... APPELLANT ("WAKEFIELD")] alluded in a footnote to 'reserv[ing] its right to raise...on any appeal,' the issue of 'whether the construction of independent claims 15, 17, and 18 should have been considered similarly to the means-plus-function limitations of Claim 1.' [...] But [APPELLANT ("WAKEFIELD")] presented no substantive argument on this issue and did not otherwise mention claims 15, 17, or 18 in its objections. [...] [APPELLANT ("WAKEFIELD")] ***did not make any separate arguments directed to those claims***." *Emphasis Added.*

Notably, substantive evidence that counters the APPELLEES' ***false claim***, appears on pages 13–16; and 26 of the joint claim construction brief where APPELLANT ("WAKEFIELD") describes the structure that supports the functional terms of the Independent Claims 1, 15, 17, and 18; and specifically on page 26 of the brief, APPELLANT ("WAKEFIELD") ***squarely argues*** and ***presents substantive argument*** as to why Independent Claims 15, 17, and 18 should be treated differently than Independent Claim 1 even though they contain the same functional terms. APPELLANT ("WAKEFIELD") states at page 26 of the joint claim construction brief the following:

> " 'A claim limitation that ***does not use the phrase 'means for'*** or 'step for' will trigger ***a rebuttable presumption that §112(f) does not apply***. This presumption is a strong one that is not readily overcome, and, as such, the Federal Circuit rarely has found a claim limitation to trigger means plus function treatment without the recitation of 'means' language in the claim [limitation] itself.' See *Apple Inc. v. Motorola, Inc.*, 757 F. 3d 1286 (Fed. Cir. 2014); *see*

also, *Greenberg v. Ethicon-Surgery, Inc.*, 91 F. 3d 1580, 1583 (Fed. Cir. 1996) (reversed the district court, stating that the fact that a particular mechanism is ***defined in functional terms*** is not sufficient to trigger §112(6))." *Emphasis Added.* **See. SAppx1276.**

In addition, APPELLANT ("WAKEFIELD") argued substantially at the Markman Claim Construction hearing the same facts and the same legal rule set by ***Williamson II***, ***Zeroclick***, and ***Dyfan*** regarding independent claims that ***do not*** use "means for" language in the limitations. APPELLANT ("WAKEFIELD") argued that a ***presumption*** exists when "means for" ***is not used*** in a claim limitation and stated the following in open court:

**a.** "[APPELLANT'S attorney Mr. Hansley states:] This means-plus-function claim limitation is only contained in claim 1. It is not contained in claims 15, 17, and 18." **See. Appx00437**.

**b.** "[APPELLANT'S attorney Mr. Hansley states:] ***We believe that the other claims in this patent don't invoke means-plus-function, and therefore, the presumption doesn't isn't given to*** **the [APPELLEES].**" *Emphasis added.* **See. Appx00437.**

**c.** "[APPELLANT'S attorney Mr. Hansley states:] Your Honor, I would like to address [APPELLEES'] argument. Number one, in page 26 of the joint brief, ***it is briefed.*** 'A claim limitation that does not use the phrase 'means for' or 'step for' will trigger a rebuttable presumption that 112(f) does not apply. This presumption is a strong one that is not readily overcome,'

**[The Court:] I am actually kind of surprised you brought that up, Mr. Hansley, since you have cited a case that has been expressly overruled by the Federal Circuit.** *Emphasis added.* **See. Appx00439.**

But rejecting the "***strong presumption***" does not alleviate the "***presumption***" that § 112, ¶ 6 ***does not apply*** when "means for" or "step for" language ***is not used*** in an independent claim; and "***poor claim drafting [or legal argument] does not***

***allow courts to bypass the <u>presumption</u> that a claim does not invoke § 112 ¶ 6 in the absence of the word 'means.'*** Nor does it ***relieve courts of their duty to evaluate whether that presumption has been overcome.***" *Emphasis added.* See. *Dyfan, LLC v. Target Corp.*, 28 F. 4th 1360 (Fed. Cir. 2022) at pg. 19.

> "To preserve an argument for appeal, a party must have raised the same argument in the district court. United States v. Joseph, 730 F. 3d 336, 337 (3d Cir. 2013). In other words, ***the argument*** presented on appeal '***must depend on both the same legal rule and the same facts*** as the argument presented in the District Court.' Id. at 342." See. *United States v. Angel-Huerta*, No. 16-4117 (3d Cir. Dec. 1, 2017). *Emphasis Added*

APPELLANT "(WAKEFIELD'S") objections to the report and recommendations that the APPELLEES reference at pages 5–6, of their response brief has a 10-page limit by the rules, and thus as part of the objections APPELLANT ("WAKEFIELD") succinctly notified the court of the following: "[APPELLANT ("WAKEFIELD")] reserves its right to raise these and other issues on any appeal. [footnote 1] For example, whether the construction of independent claims 15, 17 and 18 should have been considered similarly to the means-plus-function limitations in Claim 1. *See*, Transcript of Claim Construction Hearing, October 19, 2020, at 50:20-23" *Emphasis Added.* **See. Appx00534.** The transcript referenced in the objections at page 50 lines 20–23 state the following:

> "[APPELLANT'S attorney Mr. Hansley states:] ***We believe that the other claims in this patent don't invoke means-plus-function, and therefore, <u>the presumption</u> doesn't isn't given to*** **the [APPELLEES].**" *Emphasis added.* **See. Appx00437.**

Because APPELLANT ("WAKEFIELD") raised the issues regarding the treatment of Independent Claims 15, 17, and 18 in the joint claim construction brief, during the Markman Construction Hearing, and made a clear objection with references to the record, and the factual issues which was based on precedent, namely: *Apple Inc. v. Motorola, Inc.*, 757 F. 3d 1286 (Fed. Cir. 2014); and also, *Greenberg v. Ethicon-Surgery, Inc.*, 91 F. 3d 1580, 1583 (Fed. Cir. 1996) (where the Federal Circuit reversed the district court, stating that ***the fact that a particular mechanism is defined in functional terms is not sufficient to trigger §112(6)***) the arguments by law, were timely and properly preserved for the prior appeal.

"[A] party must properly present the issue to be preserved on appeal by ***making a clear objection***." *Emphasis Added.* See. *WC TopCo LLC v. WorkCentric 1, LLC.*, 24-10040 (MFW) (D. Del. July 26, 2024). "([T]o be preserved, the arguments must be supported specifically by '***the reasons for them, with citations to the authorities and parts of the record on which the appellant relies***'); Vente v. Gonzales, 415 F. 3d 296, 299 n.3 (3d Cir. 2005); John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F. 3d 1070, 1076 n.6 (3d Cir. 1997)" *Emphasis Added.* See. *United States v. James*, 955 F. 3d 336 (3d Cir. 2020).

APPELLANT ("WAKEFIELD") asserts that the district court erred by narrowly construing the '696 Patent terms and disregarding established precedents on means-plus-function claims, claim construction, and indefiniteness standards. These errors, if uncorrected, would render the patent invalid without justification,

causing ***manifest injustice*** by stripping APPELLANT ("WAKEFIELD") of his intellectual property rights, notably said patent term has since expired since the filing of the initial complaints in 2019. APPELLANT ("WAKEFIELD") requests reconsideration of the claim construction and indefiniteness rulings based on the detailed disclosures and case law provided.

## V. Judge Pauline Newman's Panel in the Prior Appeal Was Thoroughly Briefed with Timely Arguments on Independent Claims 15, 17, and 18 and the District Court's Dereliction of Duty.

The APPELLEES state at pages 6–7 of their response brief another ***false claim*** regarding APPELLANT ("WAKEFIELD'S") prior appeal, they state the following:

> "[APPELLANT ("WAKEFIELD'S")] challenge to the district court's indefiniteness conclusion ***focused exclusively on claim 1, with the sole mention of claims 15, 17, or 18 being a brief footnote*** ***in which [APPELLANT("WAKEFIELD")] argued that it did not concede that these three claims recited means-plus-function claim limitations.*** [...APPELLANT("WAKEFIELD'S")] opening brief presented no substantive arguments with respect to independent claims 15, 17, 18," *Emphasis Added.*

To the contrary, careful review of the record will show that APPELLANT ("WAKEFIELD'S") initial brief had ***nine pages*** (***pgs. 14-21; 46-47 of the initial brief in the prior appeal***, **See. SAppx1280–SAppx1290**) of detailed and thorough argument, with citations to authorities and parts of the record which APPELLANT ("WAKEFIELD") relied regarding the validity of Independent Claims 1, 15, 17, and 18.

The district court ruled in a dereliction of duty, without performing the ***2 Step Process*** as clarified by *Dyfan*, that Independent Claims 15, 17, and 18 were subject to §112, ¶ 6 just as Independent Claim 1 which explicitly uses the term "means for", this automatically placed Independent Claims 15, 17, and 18 into means-plus-function format. The district court ruled: "claims 15, 17, and 18 do not use means-plus-function language. But they each have a limitation very similar to the 'means for performing' phrase in claim 1. Specifically, they require 'performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot.'" **See. APPELLANT ("WAKEFIELD'S") Initial Brief at pgs. 13–18, *also* See. Appx00031, Appx00457–Appx00458.**

APPELLANT ("WAKEFIELD'S") initial brief attacked the district court's ruling from the perspective, that the district court already erroneously bypassed the ***presumption*** that § 112, ¶ 6 applied to Independent Claims 15, 17, and 18. The multi-section argument and ***nine pages*** of substantive evidence starts at page fourteen by stating the following:

> **"The District Court Legally Erred in Holding [APPELLANT ("WAKEFIELD'S")] Claim Terms Indefinite**
> The court erred in adopting the R&R's determination ***that claims 1, 15, 17, and 18 were invalid as indefinite for failing to supply structure*** for the 'means for performing' and 'means … for selecting and activating' claim terms. For the reasons that follow, the indefiniteness holdings should be reversed." *Emphasis Added.* **See. SAppx1281.**

Over the next ***nine pages*** APPELLANT ("WAKEFIELD") made a detailed and thorough argument, with citations to authorities and parts of the record on which

APPELLANT ("WAKEFIELD") relied regarding the district court's error and the validity of Independent Claims 1, 15, 17, and 18. On pages 19-20 of the initial brief in the prior appeal APPELLANT ("WAKEFIELD") specifically argues the district court's dereliction of duty in failing to implement the ***2 Step Process***. That passage in the initial brief states:

> **"The Magistrate's critique was incorrect and cannot substitute for an Indefiniteness analysis.**
> Rather than provide analysis of why the claims were invalid, the bulk of the Magistrate's decision critiqued [APPELLANT ("WAKEFIELD'S")] counsel and mistook many arguments or simply ignored them as untimely. ***These conclusions, however, were not supported by any reasoned analysis***, despite the fact that the burden was on Appellees. [footnote 3, which states:] The Magistrate also ***summarily concluded that claims 15, 17, and 18 were means-plus-function***, ***even though they did not use the 'means for' construct***. Appx0247. [...] See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F. 3d 1364, 1371 (Fed. Cir. 2005) (finding that the Federal Circuit must be 'furnished sufficient findings and reasoning to permit meaningful appellate scrutiny.')" *Emphasis Added.* **See. SAppx1286–SAppx1287.**

The APPELLEES responded to APPELLANT ("WAKEFIELD'S") arguments regarding Independent Claims 15, 17, and 18 in their response brief at page 13--(*footnote 9*), and page 51--(***notably, the APPELLEES complain about the length of APPELLANT ("WAKEFIELD'S") arguments, but only provided a footnote and a paragraph of argument in their response to APPELLANT ("WAKEFIELD'S") nine-page argument***). **See. SAppx1291–SAppx1293.**

APPELLANT ("WAKEFIELD") responded in a reply brief in the prior appeal, as cited in this appeal's initial brief at pages 23-24, with reference to *Williamson II*, the en banc precedent which mandates that the presumption for the

application of § 112, ¶ 6 cannot be overlooked when a claim limitation ***does not use*** "means for" language.

Thus, not only did APPELLANT ("WAKEFIELD") explicitly address the district court's error regarding the treatment of Independent Claims 15, 17, and 18, but APPELLEES addressed the argument, APPELLANT ("WAKEFIELD") replied, and both parties addressed the issue at the Markman Construction Hearing in the district court.

The Federal Circuit has ruled in *Simon v. Cebrick*, 53 F. 3d 17 (3d Cir. 1995), "where an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this Court." This ***does not apply*** to APPELLANT ("WAKEFIELD'S") case, but the Federal Circuit also ruled in this case that "[i]n the instant case, ***we deviate from this general rule*** ***because appellee has addressed appellant's 'takings' argument*** in its appellate brief. Moreover, ***both parties addressed this issue at oral argument***." *Emphasis Added.*

**VI. "The litigants whose rights are at stake in the cases before this Court deserve to have confidence that none of the judges ruling on their cases suffers from a cognitive impairment that may affect the resolution of their cases."** *Emphasis Added.* **See. Appx00623–Appx00627.**

In an ongoing effort to uphold the public confidence in the judiciary, the Special Committee made a report and recommendation to the Judicial Council of the United States Court of Appeals for the Federal Circuit, of which the above quote (See. VI) is included. This quotation ***disarms*** the APPELLEES' assertion at pages 24-25, which states that "[APPELLANT ("WAKEFIELD")] relies on 28 U.S.C. § 46(b), but that statute merely requires that an appeal be heard by a properly constituted panel of three Article III judges [...] 'two judges of a three-judge panel constitute a quorum legally able to transact business,' and 'settled law permits a quorum to proceed to judgment when one member of the panel dies or is disqualified.'" *Emphasis Added.*

This argument fails and is disarmed by the above quotation because these rules only pertain to a three-judge panel ***after the panel is "properly formed", not before***, and APPELLANT ("WAKEFIELD") contends that because it was known to the Chief Judge and the Federal Circuit that Judge Newman was experiencing mental disability issues and the subject of an investigation pursuant to Rule 5 of the Rules for Judicial-Conduct and Judicial Disability (**See. Appx00094–Appx00097**) during the time when his panel was being formed, that Judge Newman should have ***never been elected*** to sit on his three-judge panel. The quotation above, which forms

heading VI., from the Special Committee, ***proves without a doubt*** that irrespective of a two-judge quorum existing, that an appellant's case ***may*** be ***negatively affected*** by the formation of a three-judge panel with the inclusion of a panel judge with known mental disability issues.

Thus, failure of the Federal Circuit to enforce and follow its own precedents in the historical (en banc) decision in *Williamson II* decided in 2015, referenced in APPELLANT ("WAKEFIELD'S") Reply Brief filed in the Federal Circuit in the prior appeal, the precedent in *Zeroclick,* decided in 2018, and the ***further clarifying*** precedent in *Dyfan*, decided in 2022; by affirming the District Court's ruling which is in conflict with its own precedents, ***is overwhelming evidence*** that because of the inclusion of *suspended* Judge Pauline Newman on APPELLANT ("WAKEFIELD'S") prior appeal panel; the prior appeal--hearing, deliberation process, and ruling, ***succumbed*** to an unfair forum that was a result of 1.) bias, and 2.) a lack of quorum of capable judges in the formation of the appellate panel; which deprived APPELLANT ("WAKEFIELD") of Due Process Rights under the 14th Amendment of the United States Constitution and Equal Protection under the law, creating ***a rare manifest injustice***, and an extraordinary circumstance by ruling that Independent Claims 1, 15, 17, and 18 of the United States Patent: 7,162,696 are indefinite, and thus invalidating APPELLANT ("WAKEFIELD'S") patent potentially making hundreds of millions of dollars of damages irrecoverable. **See. Appx00131–Appx00141.**

The APPELLEES make reference in their response at page 26[2], that "[APPELLANT ("WAKEFIELD")] filed a petition for rehearing before the U.S. Supreme Court […] The Supreme Court denied that petition on ***June 26, 2023***" (*Emphasis Added*) and they argue that this is a basis to affirm the district court's denial; but at that time of denial by the Supreme Court, the Judicial Council only published to the public on ***March 24, 2023***, and did not rule on the pending investigation and evidence regarding Judge Newman's mental disability until ***September 20, 2023***, when Judge Newman refused to cooperate with the committee. **See. APPELLANT ("WAKEFIELD'S") Initial Brief at pages: 40-46, also See. Appx00112–Appx00114.**

Thus, the Supreme Court cannot rule on allegations alone. The APPELLEES argue at page 24, that "the Judicial Council did not suspend Judge Newman because she was found to be unfit and/or suffering from a judicial disability," but the order of the Judicial Council convincingly states: "[t]he evidence establishes reasonable concerns that Judge Newman suffers from a disability preventing her from effectively discharging the duties of her office." **See. Appx00113.**

---

[2] The APPELLEES falsely state to ***deceive*** the Court at page 26 that: "[The] motion under Rule 60(b), filed several months later, ***made no mention of Judge Newman*** notwithstanding that he was indisputably aware of the issue." *Emphasis Added.* **See. Appx00468–Appx00469.**

**"Congress found that these '[r]are instances of judicial misconduct [or disability] that have gone unchecked prompt the establishment of a procedure within the judiciary for the processing of complaints aimed at a federal judge.' S.Rep. No. 96-362, at 5"** *Emphasis Added*. See. *McBryde v. Committee to Rev. Cir. Council*, 83 F. Supp. 2d 135 (D.D.C. 1999).

## CONCLUSION

APPELLANT ("WAKEFIELD") humbly requests this honorable Appellate Court ***reverse*** the decision of the district court that held that APPELLANT ("WAKEFIELD") was "***untimely***" in bringing the Rule 60 Motion, which notably was filed two months after the "**Rule 60(b) Event**," **(See. APPELLANT ("WAKEFIELD'S") Initial Brief at pages 39–46**), ***reverse*** the decisions that held Independent Claims 1, 15, 17, and 18 of United States Patent №: 7,162,696 as indefinite, and ***rule on*** whether the district court's construction of the ***key terms*** outlined in this appeal was incorrect as previously briefed in the prior appeal.

Respectfully submitted,

**Date: November 19, 2024**

/s/ [signature]

**Franz A. Wakefield, *Pro Se***
**D|B|A COOLTVNETWORK.COM, INC.**
4 WEST LAS OLAS BOULEVARD; SUITE 1206
FORT LAUDERDALE, FLORIDA 33301
TELE: 305-206-4832
EMAIL: FRANZWAKEFIELD@COOLTVNETWORK.COM

## CERTIFICATE OF SERVICE

I, **FRANZ A. WAKEFIELD**, *Pro Se* APPELLANT, certify that on the following date of **November 19, 2024**, a copy of the: **APPELLANT ("WAKEFIELD'S") CORRECTED REPLY BRIEF,** was served by FEDERAL EXPRESS on the Clerk of the Court for the Federal Circuit, and via email on the counsel of record.

**Date: November 19, 2024** /s/ Franz A. Wakefield

**Franz A. Wakefield, *Pro Se***
**D|B|A COOLTVNETWORK.COM, INC.**
4 WEST LAS OLAS BOULEVARD; SUITE 1206
FORT LAUDERDALE, FLORIDA 33301
TELE: 305-206-4832
EMAIL: FRANZWAKEFIELD@COOLTVNETWORK.COM

## CERTIFICATE OF COMPLIANCE

This CORRECTED REPLY BRIEF complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(7)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(4). This REPLY BRIEF was printed using a 14-point Times New Roman font.

This CORRECTED REPLY BRIEF complies with the type-volume limitation of Federal Circuit Rule 32(a). This CORRECTED REPLY BRIEF contains **6,968 words**, excluding the parts of the BRIEF exempted under the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b)(1). This certificate was prepared in reliance on the word count of the word processing system (Microsoft® Word for Windows Version 2206) used to prepare the BRIEF.

**Date: November 19, 2024**

/s/ Franz A. Wakefield

**Franz A. Wakefield,** ***Pro Se***
**D|B|A COOLTVNETWORK.COM, INC.**
4 WEST LAS OLAS BOULEVARD; SUITE 1206
FORT LAUDERDALE, FLORIDA 33301
TELE: 305-206-4832
EMAIL: FRANZWAKEFIELD@COOLTVNETWORK.COM

# ADDENDUM

| APPELLANT'S CORRECTED REPLY BRIEF<br>SUPPLEMENTAL APPENDIX<br>TABLE OF CONTENTS | |
|---|---|
| **DOCUMENT TITLE** | **BATES NUMBERING** |
| MARKMAN DECK (EXCERPTS) | SAppx1240–SAppx1268 |
| JOINT CLAIM CONSTRUCTION BRIEF (EXCERPTS) | SAppx1269–SAppx1279 |
| APPELLANT'S INITIAL BRIEF IN THE PRIOR APPEAL (EXCERPTS) | SAppx1280–SAppx1290 |
| APPELLEES RESPONSE BRIEF IN THE PRIOR APPEAL (EXCERPTS) | SAppx1291–SAppx1293 |

| | |
|---|---|
| COOLTVNETWORK.COM, INC., v. BLACKBOARD INC., | C.A. NO. 19-291-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. FACEBOOK, INC., | C.A. NO. 19-292-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. INTERNATIONAL BUSINESS MACHINES CORPORATION | C.A. NO. 19-293-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. KALTURA, INC., | C.A. NO. 19-294-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. LIMELIGHT NETWORKS, INC., | C.A. NO. 19-295-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. MICROSOFT, CORPORATION | C.A. NO. 19-296-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. OOYALA, INC., | C.A. NO. 19-297-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. SNAP INC., | C.A. NO. 19-534-LPS-JLH |
| COOLTVNETWORK.COM, INC., v. TRAPELO CORP., | C.A. NO. 19-535-LPS-JLH |

# ❖ Plaintiff's Claim Construction Arguments

October 19, 2020

1

# MD 11 – 12

## The ClickVideoShop™ Patent describes web based Software & an All Touchscreen Smartphone Device




The instant invention requires, but is not limited to, at least one tag in the data file, and at least one of the above noted steps should be specified for defining the "hot spot's" functionality, as defined through the mode control bar 93. In accordance with the teachings of the instant invention, a "hot spot" can be programmed with more than one definition or functionality, and the mode control bar can be expanded to an indefinite number of mode control features and buttons.

**See. '696 Patent: 6:18-25**

❖ **WEB BASED**
**-Advertisers Program Multifunctional Hotspots on a Desktop PC with The Hotspot Engine™**

# Pioneering Nature of The ClickVideoShop™ Technology - The "Hot Spot Editor"

- ❖ One Design Embodiment used by Advertisers to Program the Hot spots for a Viewer User.




Mode Control

Programming The Hot spot area In the Video Frame

Programming The Hot Spots' Toggle Time

See '696 Patent 1:48-52; 2:22-27; 3:66-67; 4:1-12; 4:49-55; 4:59-63; 6:18-25; and 9:15-36

# MD 14

# Pioneering Nature of The ClickVideoShop™ Technology and The "696" Patent

❖ <u>ONE DESIGN EMBODIMENT</u> - The Hot Spot as The Mode

Transitional Frame - Reduces "Bounce Rate"




Running Video




"In-frame" Hot spot Technology

❖ After Swiping Up to "Shop," the Video is Paused & The Viewer is Allowed to Shop; Upon Clicking the "X" the Viewer is Returned to the Video which is Automatically Unpaused, without the Viewer being Transported Away.

Running Video




In-frame" Hot spot Technology

The '696 Patent applies "in-frame" technology that reduces viewer bounce-rate.
See '696 Patent 3:2-3; 5:2-7; 5:44-47; 6:18-25; 7;23-31; and 8:14-17

**MD 19 – 20**

# Pioneering Nature of the ClickVideoShop™ Invention and The SS Mobile™ Smartphone

**SS Mobile™ Smartphone** - Running The **ClickVideoShop™** Interactive Software System

- ❖ Patented in The United States & Around The World



## The ClickVideoShop™ Patent Describes Web & Application (APP) Based Software & an all Touchscreen Smartphone Device called SS Mobile™




See U.S. Patent 9,292,158; Fig 2-3, & 33-40

- **Multiple Phone Web-Based Application Framework**

**A multiple phone web-based application framework is a software framework that is designed to support the development of phone applications that are written as embedded dynamic websites and may leverage native phone capabilities, like geo data or contact lists.**

The invention **10** may incorporate HTML language or a comparable language for loading documents through a web browser. The HTML document loaded by the web browser may contain a downloadable custom plug-in(s) that implements an algorithm, and/or tags that specify, among other things, the path to a Java applet containing the object, source, executable or application code necessary to execute the multifunctional hot spots and currently active function as defined by a predetermined parameter or user input; the path to the video or audio file that the applet will play; and/or the path to a data file that contains variables used to create

**See '696 Patent: Figure 3, 5: 57-67; 6: 1-17; 9:15-36**

Area **1** and Area **2** of FIG. **3** are Multicast Windows that are controlled by the mode control bar. The windows only appear when the video is placed in a particular mode (i.e. bid, cooldigicall™ (a trademark of Applicant), clickvideoshop™ (a trademark of Applicant), entertain, cool-interact™ (a trademark of Applicant), digitallocker™ (a trademark of Applicant), coolecall™ (a trademark of Applicant), play, or link . . . etc,). FIGS. **3–5** are illustrative views of representative and alternative screen displays in accordance with the instant invention. The shape of the Video Area, Multicast Windows, and general layout of the Entertainment Area are subject to design change. It should be understood that the invention is not limited to the disclosed embodiment, but on the contrary is intended to cover various modifications and equivalent arrangements included within the spirit and scope of the claims. The instant invention has been shown and described herein in what is considered to be the most practical and preferred embodiment. It is recognized, however, that departures may be made there from within the scope of the invention and that obvious structural and/or functional modifications will occur to a person skilled in the art.

# MD 21

## The ClickVideoShop™ Patent Describes Web & Application Based Software & an all Touchscreen Smartphone Device called SS Mobile™

SS Mobile™ Smartphone

Intuitive Applications,
Bridged Connections to Digital Tv's,
Entertainment Systems, & Gaming Units




- **Multiple Phone Web-Based Application Framework**

**A multiple phone web-based application framework is a software framework that is designed to support the development of phone applications that are written as embedded dynamic websites and may leverage native phone capabilities, like geo data or contact lists.**

US 7,162,696 B2

5

The hot spot functions comprise a plurality of actions that are accessible on the function expandable menu bar. The function expandable menu bar comprises the plurality of different functions or modes. The clickvideoshop™ mode is configured to perform various actions when activated. The shop mode allows a user to click a hot spot and add items to a shopping cart. The cooldigicall™ mode facilitates video conferencing and digital phone calls over a globally accessible network between two or more clickvideoshop™ software users. The digitallocker™ mode comprises a device and means for storing and retrieving audio media, video media or other designated data or files. The digitallocker™ modem mode may further facilitate the separation of audio and visual tracks as well as the storage of individual tracks independently. The bid mode facilitates audio and video

- **See. '696 Patent 5:8-22**

See Houh Dep., at 113-119; See '696 Patent Fig. 3

**MD 24 – 26**

## The "Multifunctional Hot Spot" of The "696" Patented Technology is Versatile

- A "hot spot" can be programmed with more than one definition or functionality, and the mode control bar can be expanded to an indefinite number of mode control features and buttons. See '696 Patent 6:18-25
- A multifunctional hot spot can support one or more modes at any time. See '696 Patent 3:11-12; & 3:33-35

**Active Modes:**




Shop + Digital Locker™

**EXAMPLE: Digital Locker™ Mode and Shop Mode active and performing at the same time, for the same user, and the same Hot Spot; the "BUY NOW" button**




See. '696 Patent Figure 4; 3:5; 3:12-15; 3:7-8; 3:18-20; 5:11-14; 5:17-22

# The "Multifunctional Hot Spot" of The "696" Patented Technology is Versatile

- A multifunctional hot spot comprises a designated area within a digital media file, such as a video stream or wave file for accessing information or data residing on a particular website or database. The hot spots may further include the beginning and ending time stamps specified in a data file, which may be loaded when a video is loaded and contain as many hot spot definitions as necessary. See '696 Patent 3:56-65 and See Figure 4



## The "Multifunctional Hot Spot" of The "696" Patented Technology is Versatile

- The invention embeds, links or makes available multifunctional hot spots that change modes automatically based on predetermined parameters or user interaction with the menu bar in the video file, audio file or other type of digital file or location with the corresponding website or webpage. See '696 Patent 5:2-7

- Time stamps may be placed in the video or audio file or a corresponding routine for monitoring and communicating with the video and hot spot function for activating and deactivating functions based on the progress of the video or audio file in relation to the time stamps. User/advertiser inputs in the menu bar 93 may override predetermined functions and/or time stamps. See '696 Patent 8:22-28

ClickVideoBay™ Software Manager

Bid Mode




- Programming the Automatic Bidding Routine

Programming Hot spots - "Hotspot Editor"




Bid-Shop Mode Pair

Running Video Feed




- See Slide 14 for Call-to-Action Sequence

❖ Example, of an Automatic Bidding Routine...Bid Mode Performed when a specific Demographic is reached in the Video Feed; then the Winning Advertiser's Ad, with their Respective Hot Spot, is Inserted into the Video Feed to capitalize on the demographic reached.

# MD 48

## The Parties' Constructions

❖ **means for performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot**

**Claim 1 of the '696 Patent**

| Plaintiff's Initial Construction | Defendants' Initial Construction |
|---|---|
| The claimed function is: performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot<br><br>The corresponding structure is computer hardware and/or software operating according to the following disclosure: '696 Patent Col. 1:48-59; 1:60-67; 2:1-6; 2:18-27; 2:31-63; 2:64-67; 3:1-12; 3: 12-32; 3:33-67; 4:1-12; 4:34-67; 5:1-11; 5:57-67; 6:1-67; 7:1-9; Fig. 1A – Fig. 1C; Fig. 2A – Fig. 2C; Fig. 3 (93, 94) Fig. 4; 8:7-17. | Function: For each hot spot selected, performing at least one of a plurality of predetermined functions; wherein said hot spots reside on and are accessible from a digital video or audio file; wherein said predetermined functions are selected from a mode control; wherein the mode control comprises a plurality of modes; wherein the plurality of modes comprise a shop mode, a bid mode, an interact mode, an entertainment mode, and a link mode; wherein a specific mode is selected by a user through an expandable graphical user interface bar; wherein said specific mode further toggles based on time stamps in said digital video or digital audio file; wherein said hot spots are visualized by outlines, shading, or illumination or a combination of each, at a predetermined area on the display; wherein said Multifunctional Hot Spot apparatus is made to reside on and is executing on a computing system.<br><br>Structure: The specification fails to disclose a corresponding structure and algorithm for performing the recited function, rendering this phrase indefinite. Alternatively, and only with respect to video hot spots and not audio hot spots, in the event the term is not deemed to be indefinite, the structure is hardware and software that performs either a) the algorithm in Figs. 1A-C and corresponding description in cols. 6:26-7:67; or b) the algorithm in Figs. 2A-C, and corresponding description in cols. 8:1-9:14; both in combination with the structure in Fig. 3 and the corresponding description in col. 4:49-55. |

See Houh Dep., at 97-104; and at 108-111

# MD 71 – 74

# ❖ The Independent Claims of The "696" Patent Recite "a mode control"

- The **'696 Patent** claims **"a mode control",** which can be **one or more mode controls**.
- The **'696 Patent** additionally claims that **"the mode control" (one or more mode controls)** comprise **a plurality of modes**.
- Therefore, **when there are more than one mode control**; then each of them **separately do not need to have a plurality of modes**. It is all of **the mode controls collectively** that must **have a plurality of modes**.
- ***<u>Baldwin Graphic Systems v. Siebert</u>*** (No. 07-1262, January 15, 2008) (**Federal Circuit reaffirms that an indefinite article "a" or "an" carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising." The subsequent use of the definite articles "the" or "said" in a claim to refer back to the same claim term is not deemed to change the general plural rule**, but simply reinvokes that non-singular meaning.)

## The "A Mode Control" Rule…. "One or More" Mode Control; Applies to The "696" Patent Claims

❖ **The '696 Patent states at 9:49-51**

Wherein said predetermined functions are selected from **a mode control**;
Wherein **the mode control** comprises a plurality of modes;

❖ KEY

Mode Control Bar 1 = M1

Mode Control Bar 2 = M2

Mode Control Bar 3 = M3

Mode Control Bar 4 = M4

**Example 1:**




**Example 2:**




FIG. 4

See. '696 Patent File History FH0000352 - FH0000354; See. 2:31-66; 4:38-46; 3:33-39; 5:17-32; and 6:18-25

## The "A Mode Control" Rule...."One or More" Mode Control; Applies to The "696" Patent Claims

❖ **The '696 Patent states at 9:49-51**

❖ KEY

Mode Control Bar 5 = M5

Wherein said predetermined functions are selected from **a mode control**;
Wherein **the mode control** comprises a plurality of modes;

Example 3:




Tabs expandable

Mode Control Bar located on a Remote System used by an Advertiser User to Program Hot spots for a Viewer User

See. '696 Patent File History FH0000352 - FH0000354; See. 2:31-66; 4:38-46; 3:33-39; 5:17-32; and 6:18-25

## The Parties' Constructions

❖ **A mode control may be expanded by scrolling or other methods of expanding a graphical user interface**




*See* '696 Patent File History, 2004-04-26 Affidavit-submitted prior to Mar 15, 2013 at FH0001093

# MD 84 – 87

# The Parties' Constructions

- The one thing that "Bid Mode" requires is a multicast communication interface which allows multiple users to communicate with each other. What is required is to construe "Bid Mode" broadly to encompass all of the disclosed embodiments in the '696 Patent specification all of which require a multicast communication interface and communication between multiple users. Additionally, "Bid Mode" is described as a mode that allows for conducting an auction and/OR receiving bids. This indicates that in "Bid Mode" an auction can be held without receiving bids and vis versa. The software of The '696 Patent can also run an automatic bidding routine to conduct an auction which is very important in creating an efficient software system that is unmanned.

> Applicant) and clickvideohub™ (a trademark of applicant). The bid mode may provide a multi-cast communication interface by providing a shared white board, chat rooms, instant messaging, auctions for exchanging product and production information that is disseminated via video or text, e-mail notification of selected highlights and a view of the user's digitallocker™, with the ability to add audio and video from the multi-cast session. The interact mode facili-

*See* '696 Patent 5:24-32

> provides a storage area for saving and playing digital media files selected therefrom. The bid mode facilitates audio and/or video communication between multiple users/clients in a multicast communication interface for conducting an auction and/or receiving bids for obtaining products or product information. The interact mode facilitates interaction between users and live-streamed Internet programs. The

*See* '696 Patent 3:20-24

> two clients throughout the duration of the call (111). With reference to FIG. 1B, the software 100 determines whether the user has selected the bid mode (112). If yes, then the software 100 initiates a ClickVideoBay™ in a ClickVideoHub™, which is a multicast communication interface to facilitate A/V communication between multiple clients (113). The multicast communication interface comprises a white board shared between software clients, a section for text input and output to provide chat rooms between software clients, a section to facilitate instant messaging, a section to facilitate auctions among software clients, with product listing information presented via video or text, e-mail notifications of selected meeting highlights, a section displaying the contents of a user's digital locker and the ability to add audio and video media from the multicast meeting (113). Thereafter, the software 100 executes the desired user action, including updating the contents of each

*See* '696 Patent 6:51-65

# Bid Mode

❖ "Bid Mode" allows for an <u>automatic routine</u> which runs automatically and executes to completion when a specific parameter is reached and/or a particular demographic in a video feed or software system.

communications, systems (e-mail, etc.) and information, as shown in FIGS. 1A–3. The invention **10** embeds, links or makes available multifunctional hot spots that change modes automatically based on predetermined parameters or user interaction with the menu bar **93** in the video file, audio file or other type of digital file or location with the corresponding website or webpage.

The hot spot functions comprise a plurality of actions that

'696 Patent 5:1-7

corresponding hot spot (**244**–**246**). If the applet is in the bid mode, then it activates the bidding routine of the software and enters bids correlating to electronic signatures as they are made into the bidding system for the item specified by the custom defined object (**248**–**250**). If the applet is in the link mode, and the hot spot is activated then it the program

'696 Patent 8:52-56

# The Parties' Constructions

❖ **Additionally, the '696 Patent specification allows each mode to have activity modes or options that are selectable from the expandable graphical user interface bar i.e. mode control. For example, "Bid Mode" allows for the submission of a bid via a form with form fields. One of the options that may be selectable by a user programming the hot spot or viewing the video may be to vote on something instead of bid on something using a similar vote submission form.**

tion. The menu bar is configured to expand for the support of additional relationships, actions and links. For example, during playback of a music video, a hot spot could load and make available in-depth product or performer information (Celebrity VideoTimeCapsules™) and (Celebrity Video-Biographies™ or Now-&-Then Entertainment News (a trademark of applicant) related to something in the video, a bid submission form, or an additional media file. The function of hot spots may vary during the running of a digital

*See* '696 Patent 3:39-45

files and embedding movies into other file types. It does not disclose the use of hot spots, as contemplated by the instant invention, and does not load the data file at startup but rather consults it on every click. U.S. Pat. No. 5,708,845 discloses

The software further comprises a function expandable menu bar for identifying, offering and delivering the plurality of activity modes of the instant invention. The function expandable menu bar comprises a plurality of different

US 7,162,696 B2

3

activity modes or options which is preferably displayed at the bottom area of the video being played. The location of the function expandable menu bar may vary. The function expandable menu bar comprises a plurality of different

4

system and/or method for multifunctional hotspots that may be created or modified in accordance with predetermined parameters or user inputs.

It is also an object of the instant invention to provide an

*See* '696 Patent 3:1-3

# Bid Mode

- "Bid Mode" puts the software apparatus into a state in which data is input by a user into data fields. These data fields represent elements of the auction or similar function e.g. poll or vote. The data from the data fields is saved in a database where calculations are made on said data outputting a result based on said calculation (i.e. a tally). A user enabling "Bid Mode" may name the form fields anything that they want. As shown below, "Bid Mode" can allow for the input of data for the probability of a particular result based on an aggregation of the number of selections of a particular choice by each user(s).

## Bid Form Examples




*See* '696 Patent Figure 4 and 5 Bid Form




*See* '696 Patent 3:39-45

# MD 93

## The Parties' Constructions

❖ **Means, defined by said instructions, for selecting and activating at least one of said predetermined functions by clicking on each particular Multifunctional Hot Spot**

**Claims 1 of the '696 Patent**

| Plaintiff's Initial Construction | Defendants' Initial Construction |
|---|---|
| The claimed function is: selecting and activating at least one of said predetermined functions by clicking on each particular Multifunctional Hot Spot the corresponding structure is computer hardware and/or software operating according to the following disclosure: '696 Patent 1:48-59; 1:60-67; 2:1-6; 2:18-27; 2:31-63; 2:64-67; 3:1-12; 3:12-32; 3:33-67; 4:1-12; 4:34-67; 5:1-11; 5:57-67; 6:1-67; 7:1-9; Fig. 1A – Fig. 1C; Fig. 2A – Fig. 2C; Fig. 3 (93, 94); Fig. 4; 8:7-17; 8:44-46; '696 Patent 4:49-55; '696 Patent 8: 7-28; '696 Patent 6:1-17; | Function: Selecting and activating at least one predetermined function by the user clicking on each particular Multifunctional Hot Spot. Structure: The specification fails to disclose a corresponding structure and algorithm for performing the recited function, rendering this phrase indefinite. Alternatively, and only with respect to video hot spots and not audio hot spots, in the event the term is not deemed to be indefinite, the structure is hardware and software that performs either algorithm in: a) FIG 1C and corresponding description in col. 7:38-64; or b) FIG 2B and corresponding description in col. 8:41-62; both in combination with the corresponding description in col. 6:4-17. |

See Houh Dep., at 95-96; and at 111-119

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>BLACKBOARD INC.,<br>Defendant. | C.A. No. 19-291-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>FACEBOOK, INC.,<br>Defendant. | C.A. No. 19-292-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br>Defendant. | C.A. No. 19-293-LPS-JLH<br>JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>KALTURA, INC.,<br>Defendant. | : | C.A. No. 19-294-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>LIMELIGHT NETWORKS, INC.,<br>Defendant. | : | C.A. No. 19-295-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION<br>Defendant. | : | C.A. No. 19-296-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>OOYALA, INC.,<br>Defendant. | : | C.A. No. 19-297-LPS-JLH<br>JURY TRIAL DEMANDED |

| | |
|---|---|
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>SNAP INC.,<br>Defendant. | C.A. No. 19-534-LPS-JLH<br>JURY TRIAL DEMANDED |
| COOLTVNETWORK.COM, INC.,<br>Plaintiff,<br>v.<br>TRAPELO CORP.,<br>Defendant. | C.A. No. 19-535-LPS-JLH<br>JURY TRIAL DEMANDED |

**JOINT CLAIM CONSTRUCTION BRIEF**

effectively and efficiently control and change the response of multifunctional hot spots . . . ." ('696, 1:53-58, 3:30-32 (JA011-12); D.I. 35, Ex. B at FH0000420.)[7] Plaintiff's expert declaration[8] admits as much. (Jawadi Decl., ¶¶ 74, 104 (JA332, JA337-339).)

The dependent claims also confirm Defendants' construction. Plaintiff suggests that the "network user" of claim 8 is not the user in claim 1, thus, the same user does not select a mode and a hot spot. (Joint Brief, Plaintiff's Reply at 9.) Plaintiff equates a "website or network user" to a "viewer/user" (*i.e.*, "end user" in the specification). (Joint Brief, Plaintiff's Reply at 10-11.) But, contrary to Plaintiff's argument, claim 8 does not preclude the "user" in claim 1 from being a "website or network user." In fact, claims 10 and 11 make clear that "the user" in claim 1 is a "network user" as those claims refer to "**the** current user or . . . **another** active network user." ('696, 10:56-58; 11:2-4 (JA015-16).)[9]

**2. "[means for] performing . . ." (term 3) (claims 1, 15, 17, 18)**

**A. Plaintiff's Opening Position**

This claim term recites the term "means" and so is presumed to be a means-plus-function claim. *See EnOcean GmbH v. Face Int'l Corp.*, 742 F.3d 955, 958 (Fed. Cir. 2014). The proper

---

expandable menu bar may vary." (Joint Brief, Plaintiff's Reply at 10-11; '696, 3:2-3 (JA012).) But the specification makes clear that varying the location of the menu bar is only drawing it at different locations on the screen. (*See* '696, 7:28-31 (JA014).)

[7] Plaintiff does not dispute the stated purpose of the alleged invention. (*See* Joint Brief, Plaintiff's Reply at 10-11.)

[8] Plaintiff's Reply includes the expert declaration from its response to Trapelo's § 101 motion. Notably the declaration was not directed to claim construction, but, nevertheless, there are statements in the declaration related to the meaning of claim terms, and those statements support Defendants' positions.

[9] Plaintiff's attorney argument that the patent applies the use of in-frame technology to reduce viewer bounce-rate is not in the specification, and its citation to *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 157 (Fed. Cir. 2014), a § 101 case, is misplaced. (*See* Joint Brief, Plaintiff's Reply at 10.)

test for meeting the definiteness requirement is that the corresponding structure (or material or acts) of a means- (or step-) plus-function limitation must be disclosed in the specification itself in a way that one skilled in the art will understand what structure (or material or acts) will perform the recited function. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999). The disclosure of the structure (or material or acts) may be implicit or inherent in the specification if it would have been clear to those skilled in the art what structure (or material or acts) corresponds to the means- (or step-) plus-function claim limitation. *See id.* at 1380; *In re Dossel,* 115 F.3d 942, 946-47 (Fed. Cir. 1997).

"[W]hen the disclosed structure is a computer programmed to carry out an algorithm, 'the disclosed structure is not the general-purpose computer, but rather that special purpose computer programmed to perform the disclosed algorithm.'" *In re Aoyama,* 656 F.3d 1293, 1297 (Fed. Cir. 2011) (quoting *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999)); see also *In re Alappat,* 33 F.3d 1526, 1545 (Fed. Cir. 1994) *(en banc)*. In cases involving a special purpose computer-implemented means-plus-function limitation, the Federal Circuit has consistently required that the structure be more than simply a general purpose computer or microprocessor and that the specification must disclose an algorithm for performing the claimed function. *See, e.g., Noah Systems Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312, (Fed. Cir. 2012); *In Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). An algorithm is defined, for example, as "a finite sequence of steps for solving a logical or mathematical problem or performing a task." Microsoft Computer Dictionary, Microsoft Press, 5th edition, 2002. Applicant may express the algorithm in any understandable terms including as a mathematical formula, in prose, in a flow chart, or "in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008); *see also*

*Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *In re Dossel,* 115 F.3d 942, 946-47 (Fed. Cir.1997); *Typhoon Touch Inc. v. Dell Inc.,* 659 F.3d 1376, 1385 (Fed. Cir. 2011); *In re Aoyama,* 656 F.3d at 1306. The specification must sufficiently disclose an algorithm to transform a general purpose microprocessor to a special purpose computer so that a person of ordinary skill in the art can implement the disclosed algorithm to achieve the claimed function. *Aristocrat,* 521 F.3d at 1338.

The '696 Patent discloses sufficient structure and algorithm to allow a person skilled in the art to implement the disclosed algorithm and achieve the function of "performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot." The '696 Patent claim 13 give specific instances of the structure for a "performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot" including, "an apparatus as recited in claim 1, where said means for selecting and activating comprises: at least one predetermined parameter that activates a corresponding function from said plurality of functions when said parameter is satisfied." Further, the '696 Patent specification discloses that "the function of hot spots may vary during the running of a digital media file based on time stamps or other parameters." '696 Patent 3:45-47 (JA012).

The '696 Patent specification discloses what the aforementioned predetermined functions accomplish by the apparatus, system or method. The '696 Patent specification claim 2 discloses that "an apparatus as recited in claim 1: where said predetermined functions comprising: means for further identifying items available on a website for purchase." The '696 Patent specification claim 3 discloses that "an apparatus as recited in claim 1: where said predetermined functions comprising: means for conducting an auction and receiving bids for the purchase of identified items, through a multicast communication window & interface." The '696 Patent specification

claim 4 discloses that "an apparatus as recited in claim 1: where said predetermined functions comprising: means for linking to at least one predetermined URL address when said hot spot is activated."

Each of these functions are specifically and in detail described in more than one instance in the '696 Patent specification. *See* '696 Patent 7:49-67; 8:44-63; 5:9-56; 6:4-17 (JA014-15).

All of these disclosures in the '696 Patent specification when read together cite sufficient structure both in algorithm and prose to support the function of "performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot" to enable one of ordinary skill in the art to practice a means for performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot.

**B. Defendants' Answering Position**

The parties agree that this phrase is a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6. Although the parties also generally agree that the claimed function is "performing at least one of a plurality of predetermined functions," Plaintiff's construction improperly excludes the subsequent "wherein" clauses, which further identify the claimed function. Under either proposed construction of the function, the specification does not disclose sufficient structure to perform that function, rendering the phrase indefinite. If the claims are not found indefinite, Defendants have proposed an alternative, that while still lacking sufficient structure, does properly limit the structure to portions of the specification related to the function (as opposed to Plaintiff's inclusion of broad recitations of the prior art and background that are nowhere linked to performing the claimed function).

**1) Function**

The parties disagree whether the wherein clauses are part of the function of the means for performing limitation, but, the grammatical and logical relationship of the phrases mandates their


What is claimed is:

1. Apparatus for electrically connecting a lead of the integrated circuit to be tested to a corresponding terminal of a load board at a test site, comprising:

a housing having oppositely facing surfaces, a first approachable by an integrated circuit to be tested and a second proximate the load board, a slot extend through said housing from a first of said oppositely facing surfaces to a second of said oppositely facing surfaces;

a contact receivable in said slot having a first end engagable by the lead and a second end in engagement with the terminal, said contact being rollable across the terminal between a first orientation unengaged by the lead of the integrated circuit and a second orientation in which said first end of said contact is engaged by the lead of the integrated circuit and urged into said slot; and

means for biasing said contact to said first orientation, wherein, as said contact is rolled between said first and said second orientations thereof, sliding motion of said second end of said contact across the terminal is substantially eliminated.

8. The address generator of claim 1, further comprising means for providing an externally generated address to the address input terminal, wherein the externally generated address is a first address of a page of the random access memory.



In contrast to the claim here, the *Home Semiconductor Corp.* claim 8 and *Johnstech Int'l Corp*. claim 1 recite a means plus function limitations in which a wherein clause is expressly related to and contained within the same claim limitation. In contrast, the multiple wherein clauses in the '696 Patent are set off separately, and not contained in the same claim limitation as any of the means plus function claim limitations in the '696 Patent. This suggests that the various elements are not dependent upon each other and should not be considered in the construction of the means plus function claim limitations.

"A claim limitation that does not use the phrase 'means for' or 'step for' will trigger a rebuttable presumption that §112(f) does not apply. This presumption is a strong one that is not readily overcome, and, as such, the Federal Circuit rarely has found a claim limitation to trigger means plus function treatment without the recitation of 'means' language in the claim [limitation] itself." *See Apple Inc. v. Motorola, Inc.*, 757 F. 3d 1286 (Fed. Cir. 2014); *see also*, *Greenberg v. Ethicon-Surgery, Inc.*, 91 F. 3d 1580, 1583 (Fed. Cir. 1996) (reversed the district court, stating that the fact that a particular mechanism is defined in functional terms is not sufficient to trigger §112(6)).

1) **Structure**

a. **The specification discloses sufficient structure to perform the claimed function**

Defendants' incorrectly assert that Plaintiff has failed to identify an algorithm to support this means function. The '696 Patent specification provides flowchart for the flow of control of the software in performing each particular predetermined function i.e. bid, shop, entertainment, interact, and link.



FIG. 2B

The algorithm need only be disclosed in a degree of detail such that a person of ordinary skill in the art would know how to program the computer to achieve the claimed function. *See Aristocrat Tech v. Intern. Game, 521 F.3d 1328, 1329 (Fed. Cir. 2008).*

Here, Figs. 1A-2C disclose an "applet" as the mechanism for the invention, and Defendants' expert conceded that applets were well known in the art at the time of the filing of the '696 Patent. *See* Houh Dep., at 94:19-25 (JA252). Additionally, Defendants' expert ignored Fig. 3 which clearly lays out how the elements are arranged in the exemplary embodiment disclosed in the '696 Patent specification. *See* Houh Decl. (JA034-158).

The '696 specification and file history offer additional implementation details and technical descriptions to support the claims, showing not only how the various functions and capabilities operate but also how to implement them, giving ample information to a POSITA in 2000 to

implement the invention. *See* Zaydoon Jawadi Decl. at ¶ 125 (JA344). The '696 Patent figures . . . in my opinion, [show] extensive implementation details. *See* Zaydoon Jawadi Decl. at ¶ 127 (JA349-53).

The patent and the prosecution history also explain how a hot spot could be correlated with audio and an audio file. *See* D.I. 35, Ex. B at FH0000065 – FH0000071. Defendants' expert also readily conceded there were many ways, prior to the year 2000, that an audio stream could be visually depicted on a computer, and that these would have been known to a person of skill in the art. *See* Houh Dep., JA253-56.

Lastly, "toggle" would readily be understood as a common "feature toggle," or a "feature switch" which is used to either: 1. Hide or suspend a feature or mode, 2. Enable a feature or mode, or 3. Disable a feature or mode during runtime. The '696 Patent is clear that a mode during the running/playing of a video and/or audio file can be enabled by beginning and ending time stamps, and by a user, when the software determines what mode is active in determining what action to take when a hotspot is selected (i.e. clicked) or activated by a user, '696 Patent 6:31-33; 6:33-67; 7:1-20 (JA013-14), the mode can also be disabled, if the primary user has switched modes, '696 Patent 6:44-45; & 7:15-16 (JA013-14), or if no mode is determined as being selected by a user, or no predetermined parameter has been reached, the software in the '696 Patent determines whether to suspend or exit the program. *See* '696 Patent 7:21-22, *see also* https://docs.microsoft.com/en-us/archive/msdn-magazine/2014/may/alm-rangers-software-development-with-feature-toggles, ALM Rangers: Software Development with Features Toggles.

**b. The related method and tangible computer-readable medium claims are sufficiently enabled and valid pursuant to §112(6)**

Defendants argue that each independent claim in the '696 Patent contains two claim limitations that are functional and require sufficient structure to be disclosed in the specification

to enable each said claim limitation, i.e. "performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot" and "selecting and activating at least one of said predetermined functions by clicking on each particular Multifunctional Hot Spot." For the same reasons set forth with respect to the claim limitations in paragraph 2(a), these elements would be readily understood by a person of ordinary skill in the art.

### D. Defendants' Sur-Reply Position

#### 1) Function

Plaintiff does not dispute that the wherein clauses are logically related to the "means for performing" clause. The courts in *Home Semiconductor* and *Johnstech* held that the functions of means-plus-function claims must include the "wherein" clauses which relate back to and clarify what is required by the means, just like here. *See Home Semiconductor*, 2019 WL 3943334, at *10-11; *Johnstech*, 2016 WL 631936, at *5-6. Plaintiff tries to draw a box around "means for performing" while ignoring the related "wherein" clauses that modify that means, arguing that "the multiple wherein clauses in the '696 Patent are set off separately, and not contained in the same claim limitation as any of the means plus function claim limitations in the '696 Patent." (Joint Brief, Plaintiff's Reply at 26.) But this is a distinction without a difference. Whether the "wherein" clauses should be included within the means turns not on where clauses are placed in the typesetting, as Plaintiff implies, but on whether the clauses relate back to and clarify what is required by the means. *See Home Semiconductor*, 2019 WL 3943334, at *10-11; *Johnstech*, 2016 WL 631936, at *5-6.[15]

---

[15] Plaintiff seems to argue that the clauses starting with "wherein" do not "start" with "means for." But that argument misses the point because these clauses are modifying the "means for" phrase that directly precedes them. In any event, the Federal Circuit expressly overruled *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) and rejected the "strong" presumption in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).

21-2191, 21-2192, 21-2193, 21-2195, 21-2196,
21-2197, 21-2198, 21-2199, 21-2200

# United States Court of Appeals for the Federal Circuit

---

**COOLTVNETWORK.COM, INC.,**
*Plaintiff-Appellant*

v.

**BLACKBOARD, INC., FACEBOOK, INC., INTERNATIONAL BUSINESS MACHINES CORPORATION, KALTURA, INC., LIMELIGHT NETWORKS, INC., MICROSOFT CORPORATION, OOYALA, INC., SNAP INC., TRAPELO CORP.,**
*Defendants-Appellees*

Appeals from the United States District Court for the District of Delaware in Nos. 19-cv-00291, 19-cv-00292, 19-cv-00293,19-cv-00294, 19-cv-00295, 19-cv-00296, 19-cv-00297, 19-cv-00534, 19-cv-00535, The Honorable Leonard P. Stark.

---

## CORRECTED OPENING BRIEF OF APPELLANT COOLTVNETWORK.COM, LLC

---

Benjamin Cappel
ADDYHART P.C.
401 N. Michigan Ave
Suite 1200-1
Chicago, Illinois 60611
732.991.7285
benjamin@addyhart.com

Meredith Martin Addy
*(counsel of record)*
Charles A. Pannell
ADDYHART P.C.
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com
cpannell@addyhart.com

November 15, 2021

***Attorneys for Appellant CoolTVNetwork.com, Inc.***

and convincing. *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016).

A district court's claim construction decision is treated as a question of law and is to be reviewed de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015). Underlying questions of fact, however, are reviewed for "clear error." *Id.* at 322.

## II. The District Court Legally Erred in Holding CoolTV's Claim Terms Indefinite

The court erred in adopting the R&R's determination that claims 1, 15, 17, and 18 were invalid as indefinite for failing to supply structure for the "means for performing" and "means … for selecting and activating" claim terms. For the reasons that follow, the indefiniteness holdings should be reversed.

Where a patentee chooses to recite a claim element in a means-plus-function format pursuant to § 112 ¶ 6, there must be sufficient disclosure of the underlying structure that performs the claimed function. *Alfred E. Mann Found. For Scientific Res. v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016). Where the structural disclosures are insufficient, the claim is indefinite. *Id.* at 1342. However, linking structure to a claimed means "is not a high bar: all one needs to do in order to obtain the benefit of § 112, ¶ 6 is to recite some structure corresponding to the means in the specification … so that one can readily ascertain what the claim means …."

*Biomedino, LLC, v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007) (citation and quotation omitted).

In computer-implemented inventions, "the structure must be more than a general purpose computer or microprocessor, unless … any general purpose computer without any special programming can perform the function." *Alfred*, 841 F.3d at 1342. In most cases, this requires the disclosure of an algorithm that provides "a step-by-step procedure for accomplishing a given result." *Id.* (citation omitted). However, the algorithm need not be some complex recitation of computer code or formula. Nor does the algorithm require a lengthy recitation of steps. *See id.* at 1345 (approving a two-step algorithm). Algorithms can be provided as "a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Id.* at 1342. "In software cases, therefore, algorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art." *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007) (citations omitted).

**A. The "Means for Performing" Term Is Not Indefinite**

Claim 1 of the '696 Patent requires a "means for performing" certain predetermined functions, namely the predetermined functions used in the shop, bid, interact, entertain, and link modes, when a user selects a hotspot. Appx0020-0021; Appx0025, 3:2-12. Accordingly, the patent must provide structure for "performing"

predetermined functions when a hotspot is selected. In its adoption of the R&R, the court found that there was no algorithm because "nothing in the specification or figures discloses an algorithm for ***how*** to perform the function." Appx0010 (emphasis in original). But the court's conclusion wildly overlooks the patent specification, including the figures, and fails to provide any substantive analysis as to why the structures identified by CoolTV were insufficient and render the claim indefinite.

First, the patent specification provides specific detail regarding multiple steps for how the software performs the predetermined functions. Once a hotspot is selected and activated, the specification explains that the system will first access tags within the hotspot data file (HSDF) that specify various functions. *See* Appx00026, 6:4-5 ("A data file contains tags that can specify various functions when a hot spot is activated"), Appx0026, 6:18-21 ("The instant invention requires, but is not limited to, at least one tag in the data file, and at least one of the above noted steps should be specified for defining the 'hot spot's' functionality, as defined through the mode control bar 93."), Appx0027, 7:46-49. Next, the system takes the steps associated with the predetermined functions. These steps are specifically detailed for each function, and are as shown below.

| Predetermined Function | Description of "how" to perform that function |
|---|---|
| Shop Mode | "an electronic signature that uniquely identifies a user and item(s) for adding to a shopping cart" Appx0026, 6:8-10.<br><br>"If in the shop mode, then the software 100 will add products referenced by the hot spot to the user's shopping cart (132)." Appx0027, 7:49-51 (describing Fig. 1C Step 132, Appx0018).<br><br>"If in the shop mode, the applet adds the items specified by the custom defined object to the user's shopping cart." Appx0027, 8:46-48 (describing Fig. 2B Steps 240-242, Appx0020). |
| Bid Mode | "an electronic signature that uniquely identifies a purchased or auctioned item such that a request or bid for it can be entered into a multicast bidding or purchasing system" Appx0026, 6:11-14<br><br>"If the applet is in the bid mode, then it activates the bidding routine of the software and enters bids correlating to electronic signatures as they are made into the bidding system for the items specified by the custom defined object." Appx0027, 8:52-56 (describing Fig. 2B, Steps 244-256, App0020). |
| Interact Mode | "If the user has selected the cool interact™ mode then the software 100 plays a live audio/video stream that contains hot spots and a multicast communication window is open…" Appx0027, 7:59-63 (describing Figure 1C, Steps 137-138, Appx0018). |
| Entertainment Mode | "In the entertainment mode, the activation of hot spots causes the opening of related or targeted audio and video and/or video files…" Appx0026, 5:47-50. |

| Predetermined Function | Description of "how" to perform that function |
|---|---|
| | "A data file contains tags that can specify various functions with a hotspot is activated, such as … the URL of a video file or audio file to play when a hot spot is activated…" Appx0026, 6:10-11.<br><br>"If the user has selected the entertainment mode, then the software 100 opens a movie/video/audio file whose content is related to the item referenced by the hot spot object as it correlates to the time stamped period in the video or movie." Appx0027, 7:55-59 (describing Fig. 1C, Step 135-136, Appx0018).<br><br>"If the applet is in the entertain mode, then it opens another browser window, playing the video or audio file located at the URL address obtained from the custom defined object in the corresponding hot spot." Appx0027, 8:48-52 (describing Fig. 2B, Step 244-246, Appx0020). |
| Link Mode | "In the link mode, hotspots in the main audio and video file are initiated and open web pages, websites or other URL addresses in an adjacent browser or window or in a main playback browser/window." Appx0026, 5:44-47.<br><br>"A data file contains tags that can specify various functions with a hotspot is activated, such as … the URL of the webpage or website to open when a hotspot is activated" Appx0027, 6:7-8.<br><br>"If in the link mode, then software 100 opens with information relevant to the item referenced by the hot spot object and presents this information as a web page, jpeg, mpeg or other multimedia format" Appx0026, 7:51-54 (describing Fig. 1C, Step 133-134, Appx0018).<br><br>"if the applet is in the link mode, and the hot spot is activated then it the program opens a browser window and links to the URL obtained from the custom defined object in the hotspot" |

| Predetermined Function | Description of "how" to perform that function |
|---|---|
| | Appx0027, 8:56-59 (describing Fig. 2B, Step 252-254, Appx0020). |

Neither the Magistrate nor district court offer an explanation for why the step-by-step details above fail to provide the "how" structure it sought. Rather, the magistrate ultimately concluded "I agree with Defendants because Defendants' argument is right," Appx0245, and went on to merely criticize Plaintiff's approach to claim construction, rather than provide meaningful analysis of why the cited algorithms were not structure. Appx0245-0247.

**1. The Magistrate's critique was incorrect and cannot substitute for an indefiniteness analysis.**

Rather than provide analysis of why the claims were invalid, the bulk of the Magistrate's decision critiqued CoolTV's counsel and mistook many arguments or simply ignored them as untimely. ***These conclusions, however, were not supported by any reasoned analysis***, despite the fact that the burden was on Appellees.[3] *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) (finding that the Federal Circuit must be "furnished sufficient findings and

[3] The Magistrate also summarily concluded that claims 15, 17, and 18 were means-plus-function, even though they did not use the "means for" construct. Appx0247. The Magistrate's finding that CoolTV had tacitly admitted § 112, ¶ 6 applied by allegedly not challenging Appellees' assertion, however, also failed to explain how Appellees satisfied that burden. Appx0236; Appx0237; Appx0247.

reasoning to permit meaningful appellate scrutiny."); *Superior Fireplace v. Majestic Prods.*, 270 F.3d 1358, 1377 (Fed. Cir. 2001) ("it is important that the court provide some indication of the reasoning underlying its decision to provide a basis for meaningful appellate review.").

By adopting the Magistrate's unsupported R&R, the Court legally erred.

**a) The Magistrate ignored CoolTV's recitation of structure**

One example of the R&R's deficient analysis criticized CoolTV's citation to dependent claims 2, 3, and 13 that identified specific modes, holding the dependent claims could not supply the supporting structure. Appx0245. This conclusion was error for two reasons.

First, there is nothing inherently problematic with citing claim language to provide structure as the claims are indeed part of the specification. *See In re Packard*, 751 F.3d 1307, 1320 n.11 (Fed. Cir. 2014) (noting the specification "includes both the written description and the claims"). Moreover, it is also common for parties to assert both a functional claim or specification structure theory. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251-52 (Fed. Cir. 2005) (holding no waiver when party changed argument from a functional claim theory to a supporting structure theory).

Second, and more importantly, the R&R simply ignored CoolTV's actual argument that highlighted the specification structure—in addition to the dependent

claims. In its opening brief, CoolTV certainly noted the language in the dependent claims, but further argued "[e]ach of these functions are specifically and in detail described in more than one instance in the '696 Patent specification. See '696 Patent 7:49-67; 8:44-63; 5:9-56; 6:4-17." Appx0633 (citing Appx0027; Appx0026). Ultimately, CoolTV argued all of this detail in the specification supplied the algorithmic structure—not simply the dependent claim. Appx0633 ("All of these disclosures in the '696 Patent specification when read together cite sufficient structure both in algorithm and prose to support the function."). Each of the cites listed, provide the same structural algorithm for each predetermined function cited now. The court legally erred by ignoring CoolTV's citations to that structure. *See, e.g.*, *Nazomi*, 403 F.3d at 1371 (court must provide sufficient findings and reasoning).

**b) The Magistrate's and District Court's suggestion that CoolTV overcited its support in the joint claim chart was incorrect.**

As another example, the R&R adopted by the court mistakenly criticized the joint claim construction statement's citation to large portions of the patent specification and contended the citations were not limited until the Markman hearing. This criticism is both untrue and misses a tremendous amount of context.

First, as noted previously, the Magistrate's conclusion ignores CoolTV's explicit citation to narrower portions of the specification in its opening brief.

argument. *See Harris,* 417 F.3d at 1251-52; *Chamberlain*, 944 F.3d at 924-25. Because CoolTV's arguments and citations have always supported the same concept that the claim terms are definite as amply supported by the specification, the lower court's waiver decision and ultimate indefiniteness holding should be reversed.

#### 4. Failure to consider CoolTV's definiteness arguments was plain error.

To the extent this Court does consider the R&R's and court's waiver holding to be correct, it should still reverse for plain error. The Federal Circuit follows regional circuit precedent, here the Third Circuit, in determining plain error. *See e.g., Laboratory Corp. Of Am. v. Chiron Corp.*, 384 F.3d 1326, 1130 (Fed. Cir. 2004) (reviewing procedural issues not unique to patent law under regional circuit law); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017) (appealing from the Eastern District of Texas and applying Fifth Circuit plain error law).

In the Third Circuit, relief may be granted under the plain error rule "if (1) the District Court committed an 'error,' (2) it was 'plain,' and (3) it affected 'substantial rights.'" *U.S. v. Plotts*, 359 F.3d 247, 249 (3rd Cir. 2004) (citation omitted). "A deviation from a legal rule is an 'error.' It is 'plain' when 'clear' or 'obvious.' In order for an error to affect 'substantial rights,' it must have been 'prejudicial'; in other words, 'it must have affected the outcome of the district court proceedings.'" *Id.* (citations and punctuation omitted). If those requirements are met, then a court

"should exercise [its] discretion to grant relief if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citation omitted).

As set forth above, it was error for the court to hold that the '696 Patent claims were indefinite. The error was plain because the algorithms the court found to be missing were clearly cited to the court and relayed in the patent prose and figures. These errors affected the outcome of the proceedings because they ultimately led to the dismissal of all CoolTVs claims against Appellants and a holding of patent invalidity. And finally, relief should be granted because the extinguishment of CoolTVs patent property rights in the face of such clear and obvious error and with such little analysis of indefiniteness by the court seriously affects the fairness, integrity, and reputation of the proceedings.

## III. The District Court Misunderstood the '696 Patent's Use of "Mode"

"To ascertain the scope and meaning of the asserted claims, [the Court shall] look to the words of the claims themselves, the specification, the prosecution history, and, if necessary, any relevant extrinsic evidence." *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1366 (Fed. Cir. 2012). "[T]he specification is the single best guide to the meaning of a disputed term, and ... acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by

2021-2191, 2021-2192, 2021-2193, 2021-2195, 2021-2196,
2021-2197, 2021-2198, 2021-2199, 2021-2200

# United States Court of Appeals for the Federal Circuit

**COOLTVNETWORK.COM, INC.,**
*Plaintiff-Appellant,*

*v.*

**BLACKBOARD, INC., FACEBOOK, INC., INTERNATIONAL BUSINESS MACHINES CORPORATION, KALTURA, INC., LIMELIGHT NETWORKS, INC., MICROSOFT CORPORATION, OOYALA, INC., SNAP INC., TRAPELO CORP.,**
*Defendants-Appellees*

Appeal from the United States District Court for the District of Delaware in Nos. 19-cv-00291, 19-cv-00292, 19-cv-00293, 19-cv-00294, 19-cv-00295, 19-cv-00296, 19-cv-00297, 19-cv-00534, 19-cv-00535, The Honorable Leonard P. Stark

## CORRECTED RESPONSIVE BRIEF OF DEFENDANTS-APPELLEES

Michael S. Nadel
McDermott Will & Emery LLP
500 North Capitol Street, N.W.,
Washington, D.C. 20001
202-756-8113
mnadel@mwe.com

Charles M. McMahon
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
312-984-7641
cmcmahon@mwe.com

***Attorneys for Blackboard***

Asim Bhansali
Kate Lazarus
Scott W. Taylor
Kwun Bhansali Lazarus LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
415-630-2352
abhansali@kblfirm.com

***Attorneys for Limelight***

John D. Vandenberg
Joseph T. Jakubek
Klarquist Sparkman, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204
503-595-5300

construction of the claimed function as correct for the sake of simplifying the argument. Appx0244; Appx0248.[9]

Magistrate Judge Hall found that CoolTV's new indefiniteness arguments presented for the first time in oral argument had been waived. Appx0245; Appx0249; *see also* Appx0245 n.12. She also noted CoolTV's shifting-sands approach to claim construction:

> Plaintiff's positions often shifted between the joint claim chart, the briefing, and the hearing. This constant goalpost shifting made it difficult to pin down exactly what Plaintiff's arguments were. Counsel also waited until the hearing to raise several new arguments. It was evident that those positions had for the most part not been disclosed to Defendants before they were proffered in open court.

Appx0258. Despite the clear waiver, Magistrate Judge Hall analyzed CoolTV's new arguments and found them unpersuasive. Appx0249 ("Even were it not waived, I'm unpersuaded that a POSITA would understand a mode control and click to be the corresponding structure for the means for selecting and activating. . . . Plaintiff failed to point to an algorithm describing how the computer performs those functions."); Appx0245–0246 (addressing the narrower set of citations identified for the "means for performing" term and finding them insufficient).

---

[9] Magistrate Judge Hall also found independent claims 15, 17, and 18 indefinite because they mirror the functions recited in claim 1, and because CoolTV treated these claims the same way. *See* Appx0247; Appx0250.

reasoned, comprehensive decision was plain error.

#### 4. Independent Claims 15, 17, and 18 are All Subject to Means-Plus-Function Application

For independent claims 15, 17, and 18, CoolTV appears to argue that such claims should not trigger means-plus-function application even though they mirror the functions recited in claim 1. *See* CB19 n.3. This is contrary to Federal Circuit precedent. *See Dionex Softron GmbH v. Agilent Techs., Inc.*, 811 F. App'x 630, 632 (Fed. Cir. 2020); *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*, 799 F. App'x 847, 850–51 (Fed. Cir. 2020.) Further, CoolTV never directly addressed this issue in its *Markman* briefing and instead argued that these independent claims should be treated the same way as claim 1, which CoolTV agreed was governed by § 112, ¶ 6. Appx0645–0646; Appx0247. To the extent CoolTV's undeveloped argument is not waived, claims 15, 17, and 18 are indefinite for the same reasons explained in Appellees' district court briefing and Magistrate Judge Hall's R&R. Appx0640-0642; Appx0247; Appx0250.

### C. If the Court Reaches the Additional Disputed Claim Terms, It Should Affirm the District Court's Constructions

To affirm the district court's judgment of patent invalidity, this Court need not address claim construction of "bid mode," "interact mode," "multifunctional

ORIGIN ID:HWOA (305) 206-4832
FRANZ WAKEFIELD

4 W LAS OLAS BLVD
STE 1206
FORT LAUDERDALE, FL 33301
UNITED STATES US

SHIP DATE: 19NOV24
ACTWGT: 1.50 LB
CAD: 6570854/ROSA2570

TO **CLERK OF COURT**

**717 MADISON PL NW**

**WASHINGTON DC 20439**

(202) 275-8000 REF:
INV:
PO: DEPT:

SCANNED

**FedEx** Express

E

REL# 3785346

**THU - 21 NOV 5:00P**
**** 2DAY ****

TRK# 0201 **7700 6828 5761**

# K6 VJIA

**20439**
DC-US **IAD**